**BUKA COAL CO. v. BROWN, Price Administrator.**

**No. 4.**

United States Emergency Court of Appeals.

Decided Feb. 1, 1943.

Walter K. Sibbald, of Cincinnati, Ohio, for complainant.

Ben W. Heineman, Chief Court Review Branch (David Ginsburg, Gen. Counsel, Thomas I. Emerson, Associate Gen. Counsel, Nathaniel L. Nathanson, Asst. Gen. Counsel, and Edward Rubin and Mavis M. Clark, all of Washington, D. C., on the brief), all of the Office of Price Administration, for respondent.

Before VINSON, Chief Judge, and MARIS and MAGRUDER, Judges.

MAGRUDER, Judge.

The Buka Coal Company on June 27, 1942 filed with the Price Administrator, under § 203 of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 923, its protest setting forth objections to § 1340.209 of Maximum Price Regulation No. 120 and to § 1340.252 of Maximum Price Regulation No. 122, issued on April 28, 1942 and April 29, 1942, respectively. On July 27, 1942 the Administrator entered his order dismissing the protest upon the ground that the protestant had made no showing, as required by the Act, that it was subject to the specific provisions objected to. On August 25, 1942 the company, claiming to be aggrieved by the denial of its protest, filed a complaint in this court under § 204 of the Act, 50 U.S.C.A.Appendix, § 924.

Complainant is a corporation engaged in the retailing of bituminous coal at Cincinnati, Ohio. The objections it seeks to raise are somewhat complicated in nature, involving the interaction of minimum prices for bituminous coal established by the Bituminous Coal Division of the Department of the Interior and maximum prices for the same commodity established by the Administrator under the Price Control Act.

The Bituminous Coal Act of 1937, 50 Stat. 72, 15 U.S.C.A. § 828 et seq., empowers the Bituminous Coal Division to establish minimum prices at which producers who become members of the Coal Code and distributors [1] may sell coal. On October 1, 1940 the Bituminous Coal Division published its Schedule Of Effective Minimum

---

[1] Defined in § 4(h), pt. 2, as persons "who purchase coal for resale and resell it in not less than cargo or railroad carload lots." 50 Stat. 81.

Prices For District No. 8 For All Shipments Except Truck (5 F.R. 3117). The said schedule establishes minimum f.o.b. mine prices. When coal is sold f.o.b. destination for rail delivery the minimum price is determined by the established mine price plus freight. For "ex-river deliveries" the delivered minimum price is fixed by adding to the f.o.b. mine prices the all rail freight rate to the destination. The Bituminous Coal Division thus interpreted the Act as requiring it to coordinate the prices for coal so that the minimum delivered prices would be the same whether the coal moved by rail or by river. To this general policy the Bituminous Coal Division made an exception in the case of so-called "river (free alongside) deliveries," defined in the schedule as follows:

" 'River (free alongside) deliveries', as used in this Schedule, means:

"(a) Deliveries in barges or other floating equipment alongside river docks or other barge unloading facilities to purchasers for consumption in their plants which adjoin such docks or other barge unloading facilities;

"(b) Deliveries in barges or other floating equipment to purchasers for consumption on floating equipment operated by them;

"(c) Deliveries in barges or other floating equipment alongside river docks or other barge unloading facilities to those retail dealers (not located in the Cincinnati, Louisville, Memphis, Chicago or Minneapolis-St. Paul areas as herein defined), for resale at retail, who operate such river docks or other barge unloading facilities and whose yard and storage facilities (in which the coal purchased free alongside is stored, when it is stored) adjoin such river docks or other barge unloading facilities; and

"(d) Deliveries to any person at the mine or at a point nearer the mine than the river docks or other barge unloading facilities for transportation in barges or other floating equipment to a purchaser who takes free alongside delivery, within the meaning of Item 1-(a) or Item 1-(c) above."

The minimum prices applicable to "river (free alongside) deliveries" are determined by adding to the minimum f.o.b. mine prices "not less than a reasonable charge for rail, truck, river or other transportation and handling to the point at which the purchaser takes possession of the coal." As

appears from paragraph (c) above quoted, retail coal dealers along the Ohio River, except such dealers located in the Cincinnati and Louisville areas, who operate river docks or other barge unloading facilities, with adjoining yard and storage facilities, get the advantage of the lower delivered minimum prices applicable to "river (free alongside) deliveries." Such dealers may buy coal at the minimum mine price, take possession of it at the mine and transport it down the river in their own barges or by a common carrier, thereby profiting by the lower cost of water transportation. But retail coal dealers in Cincinnati or Louisville who have the described unloading and storage facilities which would otherwise qualify them to obtain river (free alongside) prices, are not permitted to pay for their coal the f.o.b. minimum mine price plus a reasonable charge for river transportation and handling. A schedule of prices applicable to this special class of dealers in Cincinnati and Louisville requires them to pay the minimum f.o.b. mine price plus the all rail freight rate to destination, less 60c a ton for the prepared sizes or 20c a ton for screenings. They thus must pay minimum prices lower than the minimum prices applicable generally for "ex-river deliveries" and higher than the low minimum prices for "river (free alongside) deliveries." It is urged that the tendency of the so-called "river rules" is to give to producer members of the Coal Code a monopoly in the Cincinnati area because of the competitive advantage they have in being able to bring their own coal down the river at the cheaper transportation rates prevailing in water-borne commerce.

These "river rules" have been under spirited attack and are now the subject of re-examination by the Bituminous Coal Division in pending proceedings in which protracted hearings have been held.

Such was the existing situation when the Administrator undertook to establish maximum prices under the Price Control Act.

In Maximum Price Regulation No. 120 the Administrator establishes specific maximum prices applicable to the sale of bituminous coal from a mine or preparation plant, whether the purchaser buys from the producer or from a distributor, and prohibits any person from buying or receiving bituminous coal so delivered at higher prices. The Administrator found it unnecessary to coordinate at destination the maximum prices of coal moved by rail and by river. The maximum prices for delivery at the

mine or preparation plant are applicable "for shipment to all destinations for all uses and by all methods of transportation." If the regulations had stopped there, complainant urges that it would have been enabled to purchase coal at the mine at the set maximum prices and bring it to Cincinnati on the river by common carrier or private carrier or in its own barges, and thereby obtain the benefit of the lower water transportation cost.

The provision, and the only provision, in Maximum Price Regulation No. 120 against which complainant made a protest is § 1340.209 reading as follows:

"§ 1340.209. Other regulations. Nothing contained in this Maximum Price Regulation No. 120 shall be construed to excuse any violation of any provision of the Bituminous Coal Act or any schedules, regulations, rules, or orders now or hereafter made effective by the Bituminous Coal Division."

Complainant construes this section as providing in effect that wherever the maximum prices established in other sections of Regulation No. 120 prove to be less than the applicable minimum prices set by the Bituminous Coal Division, said maximum prices shall be automatically raised to the level of the Bituminous Coal Division's minimum prices. We assume in favor of complainant that this is what the protested section does, though there is another section in Regulation No. 120, not protested by complainant, which seems to deal with the situation more specifically.[2]

To be entitled to protest under § 203 of the Price Control Act and to obtain review in this court of the Administrator's action, under § 204, complainant must show that it was "subject to" the particular provision of the regulation to which it makes objection, here § 1340.209. "Subject to" is a phrase of much more limited connotation than "aggrieved by" or "adversely affected by." Cf. § 402(b), Communications Act of 1934, 48 Stat. 1093, 47 U.S.C.A. § 402(b). Any buyer may be "adversely affected" by a maximum price regulation in the sense that if the maximum price is set higher than it ought to be, the buyer will probably be able to buy, in a sellers' market, only at the maximum price. But complainant concedes that "no member of the public and no buyer has a litigable right to a lower maximum price or indeed to any maximum price at all." Notwithstanding this concession, it seems to us that complainant as a buyer is asserting here a litigable right to a lower maximum price. Complainant's answer to this is that the Price Administrator, by recognizing and giving effect to the river rules of the Bituminous Coal Division, has established special prices for coal moving by river to Cincinnati, contrary to his finding that general maximum prices should apply whether the movement was by rail or river, thus denying to complainant the benefits of a "regulation or order" of general applicability as required by § 2(a) of Title 1 of the Price Control Act, 50 U.S.C.A.Appendix § 902(a).

Obviously, if the Administrator had established no maximum prices for bituminous coal, complainant, by virtue of the river rules of the Bituminous Coal Division, would be in the same disadvantageous position to which he now objects. Buka claims to be in a better litigable position by reason of the fact that the Administrator in Regulation No. 120 first established general maximum mine prices, which, had they stood alone, would have legislated out of existence the river rule differentials to which it takes exception and then, in the next breath, so to speak, in § 1340.209 the Administrator took away this boon by providing that wherever the maximum prices so fixed were less than the Coal Division's minimum prices, the maximum prices should be raised to the latter level. "The Lord gave, and the Lord hath taken away" —in the same regulation. But the regulation must be read in its entirety, to determine what maximum prices the Administrator has set in the particular instance, and, so read, it comes down to this, that Buka is protesting because the maximum prices for the coal which it purchases are set too high.

---

2 "§ 1340.210 *Maximum price instructions.* (a) The following maximum price instructions are applicable to the maximum prices set forth in §§ 1340.212 to 1340.233, inclusive (Appendices A to V, inclusive).

"(1) Where the effective minimum price now or hereafter established by the Bituminous Coal Division for any shipment of coals to any particular destination or market area or for any particular use, or for movement by any particular method of transportation is higher than the maximum price provided in this Maximum Price Regulation No. 120 for such a shipment, the particular shipment may be made at not more than the applicable minimum price."

Rule 9 of Procedural Regulation No. 1, issued by the Administrator shortly after he took office, states that a person is "subject to" a provision of a maximum price regulation "only if such provision prohibits or requires action by him." This contemporaneous administrative interpretation of the Act is a reasonable one and we accept it. United States v. American Trucking Ass'ns, Inc., 1940, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345. If we assume that the effect of § 1340.209 of Maximum Price Regulation No. 120, here protested against, is to establish maximum prices equivalent to the Coal Division's applicable minimum prices in the situations above set forth, then in one sense complainant is "subject to" the provision because complainant is prohibited by the regulation from paying more than the maximum price so fixed. But complainant is not objecting because it wants to pay higher prices than the maximum fixed; what it is seeking is lower prices.[3] Insofar as complainant is unable to buy its coal for less than the Administrator's maximum price, this is due, not to any prohibition in the maximum price regulation but to the Bituminous Coal Division's river rules establishing minimum prices. Complainant is not entitled to protest the regulation in the respects in which the regulation does not prohibit or require action by it merely because the regulation also forbids the payment of more than the maximum prices, a command which complainant no doubt gratefully receives.

Maximum Price Regulation No. 122 establishes maximum prices for solid fuels delivered from facilities other than a mine or preparation plant and prohibits any person in the course of trade or business from buying or receiving such solid fuel at prices higher than the maximum prices. The only section of this regulation to which complainant made protest is § 1340.252, reading as follows:

"§ 1340.252 *Less than maximum prices.* Lower prices than those set forth in Appendix A (§ 1340.261) may be charged, demanded, paid or offered: *Provided,* That nothing contained in this Maximum Price Regulation No. 122 shall be deemed to authorize members of the Bituminous Coal Code (as established pursuant to the Bituminous Coal Act of 1937) or distributors of bituminous coal who are subject to the jurisdiction of the Bituminous Coal Division of the United States Department of the Interior to make sales or deliveries at prices lower than the effective minimum prices established from time to time by the Bituminous Coal Division of the United States Department of the Interior."

It is not necessary to consider this regulation in detail because complainant's arguments with reference to it are similar to those it made with reference to Regulation No. 120, which, for the reasons already pointed out, we hold to be untenable.

We deem it proper to point out that even if complainant were entitled to have its protest considered on the merits, the question whether the Administrator's action here was "arbitrary or capricious" would not be the same as the question now pending before the Bituminous Coal Division in its reconsideration of the fairness of its river rules. It might well be that the Administrator, in fixing maximum prices, exercised his broad administrative discretion wisely in declining to disturb the existing complicated structure of minimum price differentials established by the Bituminous Coal Division. If the river rules contain inequitable features, the latter agency has power to make appropriate correction.

The complaint is dismissed.

---

[3] Buyers have no constitutional right to the protection of maximum prices. But when Congress has provided by law for the fixing of maximum prices, if the Administrator establishes a generally applicable maximum price on a given commodity and, without any reasonable basis for the classification, arbitrarily and capriciously establishes a higher maximum price applicable to a particular group of buyers, it might be argued that such buyers are thereby deprived of their rights under the due process clause of the Fifth Amendment. In consequence of our acceptance of the Administrator's interpretation that such buyers are not "subject to" the challenged provision of the regulation, they have no standing to raise such constitutional claim in this court.