**ATLANTIC MEAT CO., Inc., v. PORTER, Price Adm'r.**

No. 268.

United States Emergency Court of Appeals.

Heard at Boston Dec. 21, 1945.
Decided May 8, 1946.

Lawrence Black, of Boston, Mass. (John A. Lyons, of Boston, Mass., on the brief), for complainant.

Jacob D. Hyman, Associate Gen. Counsel, of Washington, D. C. (Richard H. Field, Gen. Counsel, Carl H. Fulda, and Irene Kolin Lichtman, all of Washington, D. C., on the brief), all of the OPA, for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MAGRUDER, Judge.

On July 14, 1942, the Price Administrator issued Supplementary Order No. 9 applicable generally to maximum price regula-tions theretofore issued or to be issued thereafter (7 F.R. 5444). This order, so far as now material, reads: "Any person who has entered into or proposes to enter into a contract with the United States or any agency thereof, * * * who believes that a maximum price established by any price regulation of the Office of Price Administration impedes or threatens to impede production of a commodity * * * which is essential to the war program and which is or will be the subject of such contract * * *, may file an application for adjustment of such maximum price in accordance with Procedural Regulation No. 6. Upon the filing of an application for adjustment and pending the issuance of an order granting or denying such application, contracts * * * may be entered into, or offered to be entered into, and deliveries may be made, at the price requested in such application. If, however, the order issued denies the application in whole or in part, the contract price shall be revised downward to the maximum price ordered, and if any payment has been made at the requested price, the applicant may be required to refund the excess."

Procedural Regulation No. 6 was issued July 1, 1942 (7 F.R. 5087). It prescribed the form of application to be made under Supplementary Order No. 9. In Armour & Co. v. Brown, 1943, 137 F.2d 233, 240, we said: "Supplementary Order No. 9 was designed to obviate delays in Government procurement of commodities essential to the war program. It was an invitation to sellers as to whom the established maximum prices were 'unreasonably low' to apply for adjustment upwards of the maximum prices of commodities to be sold to the Government, with permission to contract with the Government at such higher requested prices, subject to appropriate refund if the application for adjustment were subsequently denied by the Administrator. So far as government contracts are concerned, Supplementary Order No. 9 seems to make provision for relief of sellers who may have lost the right to challenge the validity of the regulation itself, or who may not be entitled to relief under the general adjustment provisions of the regulation, but whose continuing output is needed by the Government and

is not likely to be forthcoming at prices which do not meet the costs of production."

By Revised Supplementary Order No. 9, effective May 17, 1943 (8 F.R. 6175), the adjustment provision for government contracts as provided in Supplementary Order No. 9 was specifically made inapplicable to Revised Maximum Price Regulation No. 169—Beef and Veal Carcasses and Wholesale Cuts (7 F.R. 10381). A corresponding change was made in Procedural Regulation No. 6 (8 F.R. 6173). In his Statement of Considerations accompanying the issuance of Revised Supplementary Order No. 9, the Administrator explained that, as applied to the meat regulation, the special adjustment provision for government contracts had proved to be unworkable and an undue administrative burden (1 Pike and Fischer OPA Price Service, p. 8155).

On the date of the issuance of Revised Supplementary Order No. 9, complainant, Atlantic Meat Co., Inc., was a non-processing slaughterer of cattle which sold its beef carcasses and wholesale cuts to its parent corporation, Batchelder & Snyder, Inc., a hotel supply house.

On April 5, 1945, complainant filed with the Administrator its protest against Revised Supplementary Order No. 9 and Procedural Regulation No. 6, as amended. The protest alleged that the protested orders prevented complainant "from receiving the fair value of, or even recovering its out-of-pocket costs on, that portion of its beef which, after slaughter, it is compelled by the War Food Administrator to set aside and hold for the United States Government and its agencies"; also that said orders violated the Act, 50 U.S.C.A.Appendix § 901 et seq., and the Fifth Amendment. It was further alleged that since May, 1943, when the adjustment provision on government contracts was made inapplicable to RMPR 169, complainant had consistently sustained ruinous losses and that the removal of the adjustment provision for beef, "when viewed in the additional light of the set-aside orders of the War Food Administrator which presently compel Protestant to set aside, hold for and sell 60% of all of its beef meeting Army specifications to designated Government agencies", resulted in peculiar hardship to complainant. The relief requested was that the protested orders be further amended "to again permit slaughterers of beef to enter into agreements with Government agencies for the sale of carcasses and wholesale cuts above the ceiling prices established by Revised Maximum Price Regulation No. 169 subject to disapproval by the Office of Price Administration when and if it appears that the additional price is not necessary to permit a slaughterer to continue business and meet its out-of-pocket expenses."

In an order entered May 9, 1945, providing protestant with an opportunity to present further evidence, the Administrator stated: "This protest is addressed to Revised Supplementary Order No. 9 and Procedural Regulation No. 6, which are not price fixing orders, but merely establish a convenient procedural device for making a certain type of adjustment provision applicable to a large number of maximum price regulations. Neither the procedural regulation nor the order prohibit or require action by any person, as required by Section 24 of Revised Procedural Regulation No. 1 and they are therefore not protestable since nobody is 'subject to' them within the meaning of Section 203(a) of the Act. Buka Coal Co. v. Brown, Em.App.1943, 133 F.2d 949, 952. Any limitation of the scope of the order and regulation provides ground for objection only because of its effect upon the regulations which actually fix the prices. Thus Protestant's objection is in fact directed against the inapplicability of the adjustment provision to maximum prices established by Revised Maximum Price Regulation No. 169. The protest therefore must be treated [as] against that latter regulation."[1]

---

[1] We agree with the Administrator's technical point that Revised Supplementary Order No. 9 and Procedural Regulation No. 6, as amended, are not protestable. We shall treat the complaint, in the way the Administrator treated the protest, as constituting in effect a challenge to the validity of the maximum prices for beef established by RMPR 169 in their application to sales to government

After further proceedings the Administrator, on September 28, 1945, entered an order denying the protest. In his opinion accompanying the order, the Administrator gave as one ground for denying the protest the following: "Protestant's principal ground for objection has been eliminated. On August 18, 1945 all set-aside orders on beef were suspended by the War Food Administrator. (WFO 75-2, 10 F.R. 10165) Consequently the 'peculiar hardship' of which Protestant complained has been removed and Protestant is now free to sell all of its beef to civilian buyers. The issue of the protest has thus become moot."

After denial of the protest, the present complaint was filed in this court on October, 29, 1945. It was prayed therein that this court "determine and declare that Revised Supplementary Order No. 9 and Procedural Regulation No. 6, as amended, were unlawful so long as the War Food Administrator's set-aside orders were in effect."

On November 9, 1945, respondent submitted a motion to dismiss the complaint for the reason that the proceeding had become moot as the result of the suspension of the set-aside orders on beef. However, on December 12, 1945, such set-aside orders were reimposed by the War Food Administrator (10 F.R. 15061), so this ground of mootness was no longer available. At the oral argument on the motion to dismiss, counsel for respondent contended that the proceeding had become moot for a different reason, namely, that in July, 1945, the physical assets, good will and business of complainant, and of Batchelder & Snyder Co., Inc., its parent corporation, were sold to Hygrade Food Products Corporation, and that complainant then went out of the business of slaughtering cattle.

Since complainant is no longer engaged in selling beef carcasses, it is obvious that it has no remaining litigable interest in a judgment by this court prospectively setting aside RMPR 169 for lack of an applicable adjustment provision on sales of beef to government procurement agencies.

Nor do we see how, at this stage, complainant could derive any advantage from a retroactive declaration by this court that RMPR 169 was invalid in the respect stated from and after May 17, 1943 (the effective date of Revised Supplementary Order No. 9). The original Supplementary Order No. 9 permitted prospective sellers to apply for adjustment upwards of the maximum prices of carcass beef to be sold to government procurement agencies, with permission to contract with the government agencies at such higher requested prices, subject to appropriate refund if the application for adjustment were subsequently denied by the Administrator. When this adjustment provision was made inapplicable to RMPR 169, complainant could no longer contract with government procurement agencies at prices in excess of the established maximum prices, subject to adjustment; and it must be assumed, indeed it is not denied, that the contracts made by complainant with government procurement agencies after May 17, 1943, were for sales of beef at the maximum prices prescribed by RMPR 169. If it be assumed that the adjustment provision in question ought not to have been deleted from RMPR 169 in May, 1943, nevertheless it is too late for complainant to obtain from the government procurement agencies more than the contract price on transactions long since executed. Furthermore, under the concluding clause of § 204(e) (2) of the Act, reading, "nor, except as provided in this subsection, shall any retroactive effect be given to any judgment setting aside a provision of a regulation or order issued under section 2 * * *", retroactive effect is given to our judgments only in criminal or civil enforcement proceedings under § 205, as we pointed out in Thomas Paper Stock Co. v. Bowles, 1945, 148 F.2d 831, 839, note 14. The recent case of Utah Junk Co. v. Porter, 1946, 66 S.Ct. 889, did not deal with this provision of the Act.

In view of the foregoing, respondent's motion to dismiss the complaint should be granted.

A judgment will be entered dismissing the complaint.

procurement agencies in the absence of the special adjustment provision deleted by Revised Supplementary Order No. 9.

So far as the present case is concerned, nothing turns on this technical point.