GALIÑANES HERMANOS, INC., Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, FRANCISCO TORRES AGUIAR, JUDGE, Respondent; UNIVERSAL FURNITURE CO., INC., Intervener.

No. 2037. Argued December 4, 1953. — Decided January 27, 1955.

---

Rodríguez Otero & Ramírez and José Quiñones Elías for petitioner. Romany & Romany for intervener, defendant in the main action.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The sole question for decision in the instant case is whether a lessee may evict his sublessee whenever he needs in good faith the leased premises to expand his business. The trial court held that only the owner of the property could withdraw the leased premises from the rental market to devote it to his own use. Petitioner appealed from the judgment containing such pronouncement.

The facts are quite simple: Galiñanes Hermanos, Inc., as lessee of the ground floor of a certain building, subleased

part of those premises to Universal Furniture Co., Inc. under a written contract which expired in 1951. After serving notice on the sublessee of its intention to recover the subleased premises as required by law, it filed an unlawful detainer proceeding in the San Juan Part of the District Court of Puerto Rico, alleging that "petitioner desires to recover the above-described premises to occupy them personally with a pet-shop business exclusively his own." The defendant, intervener herein, answered alleging, as a preliminary point of law, that the complaint did not state facts sufficient to constitute a cause of action, accepting the capacity of the parties, the status of sublessor of petitioner, and the contract between the parties, and denying the fact that petitioner needed the premises to occupy them personally. The trial court sustained the complaint. On appeal to the San Juan Part of the Superior Court, the latter reversed the District Court on the ground already stated. To review that action we issued a writ of certiorari.

■ The law applicable here is § § 12, 12–A, and 12–F of Act No. 464 of April 25, 1946 (Sess. Laws, p. 1326), as amended by Act No. 201 of May 14, 1948 (Sess. Laws, p. 574), an extract of the pertinent parts of which reads as follows:

"Section 12.—Regardless of the date of construction or occupancy of both dwellings and business premises, and irrespective of any change of landlord or nominal lessor, the lease contract shall, on the day of expiration agreed upon therein, be compulsorily extended by the lessor at the option of the tenant or lessee, without altering any of the clauses thereof, all of which shall be deemed in force. The foregoing is applicable both to written and oral contracts and the extension shall be understood for the terms fixed by Section 1471 of the Civil Code, but never for a period longer than the duration of the emergency declared in this Act. Said extension is also applicable to leased lots whereon buildings belonging to an owner other than the owner of the lot are erected.

"Section 12–A.—As exceptions to the provisions of the preceding section, the lessor may refuse the extension of the lease contract and, consequently, commence unlawful detainer proceedings only in the following cases:

". . . . . . . . .

"7. Whenever he needs for himself, in good faith, the commercial or business premises. In order that this exception may lie, the following conditions shall concur:

"*a*. That the lessor has acquired the property prior to July 17, 1947, the date of effectiveness of The Reasonable Rents Act as regards commercial and business premises, and that the premises were leased for a fixed period, and the term of the lease has expired.

"*b*. That the lessor has not in the same locality, a business of the same kind as the one operated by the tenant or similar thereto established in a building of his own or a building belonging to another.

"*c*. That the lessor is interested in the premises to occupy them personally with a business exclusively of his own.

"*d*. The mere fact that the lessor wishes or needs to extend his business shall not be sufficient cause to justify his necessity of occupying the premises he may have leased.

"*e*. The lessor shall give the affected tenant authentic written notice of his need to occupy the premises for himself, and shall require said tenant to vacate the same, all at least six months in advance of the date when the tenant receives the notice to vacate.

"*f*. In within ninety (90) days after the premises are vacated, and without just cause, the same are not occupied and opened to the public by the lessor, the tenant may recover from the lessor indemnification for the damages actually sustained by reason of the ejectment, in a sum which shall never be less than three months' rent, plus costs and plaintiff attorney's fees. If at any time during the twelve months following the date on which the tenant vacated the premises, the lessor assigns or leases same to another person, he shall indemnify the tenant for the damages caused him, which shall be fixed at a sum which shall in no case be less than two hundred (200) dollars, or six months' rent, whichever is greater, plus costs and plaintiff attorney's fees as fixed by the court. The foregoing is without prejudice to the liability fixed for the lessor by Section 12–J."

And § 12–F:

"The involuntary extension prescribed in Section 12 shall be equally applicable to subleases during the time in which the lessee is in possession of the premises."

We have already decided that of all the restrictions imposed by § 12–A–7 of the Reasonable Rents Act, the following remain in force, in the case of expired leases, after the decision in *Rivera* v. *R. Cobián Chinea & Co., Inc.*, 181 F. 2d 974 (*Maris*, writer; *Magruder*, dissenting), (1950) : § 12–A–7 (*c*), bearing on the necessity of proving that the lessor desires to recover the premises to occupy them personally with a business exclusively of his own; § 12–A–7 (*e*), which provides that the lessor shall give the affected tenant authentic written notice of his need to occupy the premises for himself, and shall require said tenant to vacate the same at least six months in advance of the date when the tenant receives the notice to vacate; and § 12–A–7 (*f*), regarding the indemnification to be paid to the tenant when the premises are not occupied and opened to the public by the lessor within 90 days after they are vacated, or if during the twelve months following vacation the lessor leases the same to another party. *Roselló Hnos.* v. *Figueroa*, 74 P.R.R. 403, 408 (Ortiz, 1953) ; *Mouriño* v. *Superior Court*, 76 P.R.R. 256, (Belaval).

 However, although no one questions any longer the owner's right to withdraw from the rental market a property to devote it to his own use, even if it is to expand the premises for a business of the owner-lessor, of the same kind or similar to that of the tenant, inasmuch as such a prohibition would be unconstitutional, the sublessor's right to withdraw from the rental market a property subleased by him in order to devote it to his own use, is open to question, since such a restriction would not be unconstitutional and could therefore be regulated otherwise.

The trial court seems to have employed the questionable

hermeneutics method which contrasts the literal meaning of the letter of the law with the rationality of the effects it produces. We might perhaps accept its method, with the customary reservations, if it had included among the rational elements the legal theory corresponding to the institution involved. In civil law, sublease means the voluntary relinquishment of part of the property right. "The use or enjoyment is a right inherent in the thing and inseparable therefrom; *it is one of the various rights which make up the dominion*, and therefore belongs to the owner who, precisely for that reason, may dispose of it by onerous or lucrative title, for more or less time, with greater or lesser extension. It is absurd that if the use or enjoyment of a thing is conveyed without consideration, it constitutes a real right of usufruct, or use, or habitation, and that it is not so when the conveyance is made in some other way, under another name, or on payment of a specified rental. In either case, in conveying the use or the right the owner dispossesses himself of it, loses it, and delivers it to another. If afterwards he wishes to sell or give in payment the object or thing with all rights inherent therein, he may convey everything that was not conveyed theretofore, not what he already gave, since it is a principle even of common sense that no one can give what he has not, that which is not his, what he himself gave previously to another." 10 Manresa 467, 468 (5th rev. ed. of the Instituto Editorial Reus, 1950).

In this commentary, Manresa expresses two concepts which clarify sufficiently the juridical phenomenon found in the lease: (1) that the lease is one of the rights of disposal (*jus disponendi*) of ownership, and, therefore, one who leases disposes of part of his property right in favor of another person, and (2) that the lease is by nature a property right transmissible in part from one person to another.

Since we are concerned with a transmissible right, "the sublease is a new lease entirely independent of the original

lease." 10 Manresa 520 (ed. cit.). Therefore, when the lessee becomes a sublessor, he has part of the owner's property right which has been alienated in his favor and may convey that part of the property right to a sublessee as long as his contract is in force. What terminates the partial conveyance of the property right created by the lease is the termination of the contract. Upon termination of the contract between the sublessor and the sublessee, the sublessor may assert against the sublessee all property rights acquired by him from the owner-lessor under the original contract. This being so, he has the right to assert against the sublessee all the owner's rights to the use and enjoyment of the thing, since such rights are alienated to him.

That is why § 22 of Act No. 464 of April 25, 1946, as amended by Act No. 201 of May 14, 1948, which contains the definitions of the terms employed therein, in providing that " 'proprietor' and 'owner' include any landlord, owner, lessor, sublessor, administrator, natural or artificial person, manager and attorney for the purpose of administration of one or more rental properties," is full of juridical sense, for all the individuals comprised therein with a right thereto are the owners or the persons to whom the owner has alienated part of his property, as in the case of a sublessor, or the persons acting on behalf of or for the benefit of the owner, as in the case of administrators, managers, or attorneys-in-fact of the owner. That is why § 12–F of the Reasonable Rents Act, incorporated by Act No. 201 of May 14, 1948, provides that "the involuntary extension prescribed in Section 12 shall be equally applicable to subleases during the time in which the lessee is in possession of the premises," identifying the lease and the sublease as to their juridical effects, in the relations between owner-lessor and lessee, and lessee-sublessor and sublessee.

Although there is not, in our judgment, any deficiency in the provisions of the Reasonable Rents Act of

Puerto Rico for the correct interpretation of a special statute, taken substantially from the Urban Leases Act of Spain of December 31, 1946, we can not depart from the reality that, in case of the need for supplying any deficiency in the provisions of the special statute, we would have to resort to the Civil Code of Puerto Rico of 1930, whose § 12, a replica of § 16 of the Spanish Civil Code, provides: "In matters which are the subject of special laws, any deficiency of such laws shall be supplied by the provisions of this Code," the provisions of our Civil Code being applicable, therefore, to the true juridical relations existing between sublessor and sublessee as respects the use and enjoyment of the thing leased.

The judgment rendered herein by the Superior Court of Puerto Rico, San Juan Part, will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

Mr. Justice Negrón Fernández and Mr. Justice Sifre concur in the result.