GUDELIA TORRES BONILLA ET AL., Plaintiffs and Appellees, *v.* JULIO BIAGGI, Defendant and Appellant.

No. 10555.   Argued November 5, 1951.—Decided November 29, 1951.

*Sergio León* for appellant.    *R. Hernández Matos* and *A. Colón Clavell* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

On May 31, 1950, Gudelia Torres Bonilla and Santiago Santiago Rivera filed a complaint in an action of unlawful detainer at sufferance against Julio Biaggi, in the extinct District Court of Ponce. They alleged that they are the owners in fee simple of a house built of masonry, located in Comercio Street in Yauco, having acquired it by purchase on March 13, 1948, by public deed; that on the date of the purchase the defendant occupied in said property a certain space in which he had a commercial establishment, by virtue of a verbal lease contract; that they did not renew the said contract in any manner whatsoever and on the contrary terminated it, giving the defendant written notice to vacate said premises; that despite the lapse of more than two years

from the written notice, the defendant has not vacated it; and that they desire in good faith to obtain material possession thereof to occupy it immediately for their personal use, permanently withdrawing said property from the rental market of commercial and housing accommodations.

The defendant denied in his answer having received from the plaintiffs any written notice to the effect that the latter were terminating the lease, although he admitted having received a written notice in the sense that the plaintiffs intended to sell the house. He alleged that the plaintiffs set aside said notice and explicitly made a new lease by virtue of which he assigned to them one of the rooms he occupied in exchange for the construction of a new annex; and that upon trying to obtain possession of the premises, plaintiffs were not acting in good faith, for what they really intend is to sell the building.

As special defenses the defendant alleged that the court lacked jurisdiction inasmuch as the rental was less than $1,000 and that after the novation of the contract he was not required to vacate the premises six months in advance of the filing of the complaint; that he has paid the rent promptly ever since the novation of the contract; that after said novation he enlarged the business he had established there; and that the plaintiffs do not intend to use the premises in good faith and for their personal use, but rather intend to sell the building.

The two hearings required by law were held jointly and the case was heard on its merits, whereupon the parties offered oral and documentary evidence. The court then entered judgment granting the complaint and ordering the eviction of the defendant within twenty days after the judgment became final and unappealable.

The defendant insists on appeal that the lower court erred in not deciding that the demand made by the plaintiffs on May 4, 1948, was annulled by the lapse of time, by the novation of the contract, by an implied renewal of the latter and

because, the term given him to vacate the building having expired the following May 31,. he was not given notice again as provided by law.

When the plaintiffs acquired the property on March 13, 1948, the Reasonable Rents Act—No. 464 of April 25, 1946 (Sess. Laws, p. 1326)—provided in § 12, among other things, that "As long as the tenant pays the basic rent or the reasonable rent fixed by the Administrator as the case may be, the landlord cannot establish an action of unlawful detainer to recover the possession . . . of a house or building used for business . . . even if the term of the contract has expired. For the purpose of this Section, the lease shall be understood to be renewed for the terms stipulated by Section 1471 of the Civil Code [1] during the existence of the emergency to which this Act refers."  Nevertheless, since insofar as it applies to the facts of the instant case, said Section was declared unconstitutional by the United States Court of Appeals for the First Circuit in *Rivera* v. *R. Cobián Chinea & Co.*, 181 F. 2d 974, on May 19, 1950, the plaintiffs were not bound by it.  Consequently, the oral notice they gave the defendant three or four days after purchasing the property, served to terminate the lease contract previously in force between the former owner of the property and the defendant herein.  The plaintiffs could do this pursuant to the provisions of § 1461 of the Civil Code, 1930 ed., which provides that "The purchaser of a leased estate has a right to terminate the lease in force at the time of making the sale, . . ."

However that was not the only notice given by the plaintiffs to the defendant requesting him to vacate the property. The record discloses a document entitled "Notice and Demand" sent by them to the defendant by registered mail on May 4, 1948, notifying the latter that they "from the date of this notice and demand, are terminating the lease which

---

[1] Section 1471 of the Civil Code, 1930 ed., provides:

"Should a term not have been fixed for the lease, it is understood for years, when an annual rent has been fixed, for months, when the rent is monthly, and for days, when it is daily. . . ."

you held of half of the described house with the former owner thereof, and you are given until the 31st of the current month of May 1948, to vacate and place at the disposal of its present owners the half of said house which you are now occupying." [2]

█ Although the plaintiffs gave the defendant written notice ten days before the effectiveness of Act No. 201 of May 14, 1948 (Sess. Laws, pp. 574, 580), which amended § 12–A of Act No. 464 of 1946,[3] that did not mean, however, that when the aforesaid amendatory Act went into effect the plaintiffs had once more to give the defendant written and authentic notice to vacate the premises. The defendant was already fully aware that the plaintiffs had acquired the property and that they wanted him to vacate it.[4] As we said in *Fajardo* v. *District Court*, 69 P.R.R. 441, 446, "in construing statutes the primary aim is not to obtain a preconceived arbitrary objective, but to carry out the purpose of the law–

---

[2] It is further apparent from the record that on May 4, 1948, the plaintiffs also wrote to the Rent Administrator notifying him that they had purchased the property involved in the unlawful detainer proceeding and requesting that it be withdrawn from the rental market and that the Administrator replied that no permit from said office was necessary to withdraw a house from such market.

[3] Section 12–A provides essentially that: "The lessor may refuse the extension of the lease contract and, consequently, commence unlawful detainer proceedings . . . (7) Whenever he needs for himself, in good faith, the commercial or business premises. In order that this exception may lie, the following conditions *shall concur:* (*a*) That the lessor has acquired the property prior to July 17, 1947 [this should read 1946], the date of effectiveness of the Reasonable Rents Act as regards commercial and business premises, and that the premises were leased for a fixed period, and the term of the lease has expired. [The parties have neither raised nor discussed any question as to the foregoing provision] . . . (*e*) The lessor shall give the affected tenant authentic written notice of his need to occupy the premises for himself, and shall require said tenant to vacate the same, all at least six months in advance of the date when the tenant receives the notice to vacate." (Italics and brackets ours.)

[4] The fact that the defendant was given in the notice only twenty-seven days to vacate the property does not alter the situation, inasmuch as the complaint was not filed until long afterwards and the eviction would never take place before the six months from the notice. See § 12–A 7(*e*) of Act 464, *supra*, as amended in 1948.

maker." In this case the purpose of the lawmaker was fully carried out, since as a matter of fact the defendant was notified in writing that the plaintiffs wanted him to vacate the premises. *Cf. Pérez* v. *District Court*, 70 P.R.R. 624, 630.

▌ Nor do we think that there was a novation of the contract. The lower court did not believe defendant's evidence to the effect that he assigned to the plaintiffs one of the rooms he occupied and that the latter assigned to him an annex they built with his acquiescence, approximately one year before the complaint was filed. The court *a quo* concluded in this connection that the plaintiffs had merely made of cement a zinc partition which existed in the yard of the building and that the defendant always occupied the same space. Under such circumstances we fail to see how the novation of the contract may be successfully pleaded.[5]

▌▌ In order that there may be an implied renewal it is indispensable that there be a lease contract and that on the expiration thereof the lessee continue in possession with the acquiescence of the lessor for fifteen days. Section 1456 of the Civil Code, 1930 ed.,[6]; *León Parra* v. *Gerardino*, 58 P.R.R. 494; *Besosa* v. *District Court*, 68 P.R.R. 29. Since no lease contract, either express or implied, existed here between the plaintiffs and the defendant, we do not see how an implied renewal could arise.[7]

---

[5] Pursuant to § 1157 of the Civil Code, 1930 ed., which deals with novation, "Obligations may be modified: (1) By the change of their object or principal conditions. (2) By substituting the person of the debtor. (3) By subrogating a third person in the rights of the creditor."

[6] Section 1456 of the Civil Code, 1930 ed., reads:

"If, on the expiration of the contract, the lessee continues enjoying the thing leased for fifteen days with the acquiescence of the lessor, it shall be understood that there is an implied new lease for the time mentioned in sections 1467 and 1471 unless a notice has previously been given."

[7] As has been noted, the plaintiffs gave the defendant oral notice to vacate the property, which at that time could be done in that fashion pursuant to the law. Furthermore, on May 4, 1948, they gave the defendant written notice to the effect that they were "terminating the lease which you held of half of the described house with the former owner thereof."

■ Moreover, there was no extension of the contract either. Even though pursuant to § 12 of Act No. 464 of 1946, *supra*, as amended by Act No. 201 of 1948, "Regardless of the date of construction or occupancy of both dwellings and business premises, and irrespective of any change of landlord or nominal lessor, the lease contract shall, on the day of expiration agreed upon therein, be compulsorily extended by the lessor at the option of the tenant or lessee," nevertheless § 12–A of the same Act establishes as an exception that "the lessor may refuse the extension of the lease contract" in certain cases which are specified. That was precisely what happened here, that is, the new purchasers refused to extend the lease contract previously existing upon requesting the defendant to vacate the premises.

■ It is true that the written notice was sent to the defendant on May 4, 1948, and that it was not until May 31, 1950, that is, shortly after two years, that the complaint was filed. It is also true that during all that time the plaintiffs received from the defendant the sum of $15.75. However, monthly receipt of that amount did not originate an implied lease contract between the plaintiffs and the defendant. The former were undoubtedly entitled to be paid for the use of the property and their clear purpose was, from the moment that they acquired it, to have the defendant vacate the premises, thereby terminating the lease contract existing with the previous owners. *Vélez* v. *San Miguel*, 68 P.R.R. 534; *Vidal* v. *District Court*, 71 P.R.R. 544.

■ Clearly the lower court had jurisdiction to entertain the case. It was an action of unlawful detainer at sufferance and these actions must always be tried in the district court. *Miranda* v. *Jarabo*, 64 P.R.R. 855; *Vidal* v. *Mason*, 68 P.R.R. 558; *Díaz* v. *Morales*, 71 P.R.R. 648.

■ Nevertheless, it was an error for the trial court to order the eviction of the defendant "within twenty days after this judgment becomes final and unappealable." Pursuant

to Act No. 24 of August 21, 1948, (Spec. Sess. Laws, p. 238), "Should the action be based on any of the grounds prescribed in paragraphs 6 to 8, inclusive, of Section 12–A, . . . the ejectment shall be decreed ninety (90) days after the judgment becomes final." Since the complaint in the instant case was based on the ground contained in paragraph 7 of § 12–A of the Act, ejectment shall not take place prior to ninety days after the judgment becomes final and unappealable. The judgment of the lower court must be modified in this respect.

■ The appellant also complains of the award of $300 as attorney's fees. As to this item it is sufficient to indicate that we have repeatedly held that the imposition of attorney's fees is a matter within the discretion of the trial court and that we do not think that in this case, taking all the circumstances into consideration, said court abused its discretion in ordering the defendant to pay said fees nor in fixing them in the aforesaid amount. See *Collazo* v. *Conesa,* 70 P.R.R. 144; *Cerra* v. *Motta,* 70 P.R.R. 822; *Santiago* v. *González,* 71 P.R.R. 882.

The judgment appealed from will be modified in the sense of ordering the eviction of the defendant ninety days after the mandate is received in the lower court, and as modified it will be affirmed.

---

MR. CHIEF JUSTICE TODD, JR., dissenting.

For the reasons stated in my dissenting opinions in *Vélez* v. *San Miguel,* 68 P.R.R. 535, 543 and *Vidal* v. *District Court,* 71 P.R.R. 544, 551,[1] I dissent once more, in the instant case.

In *Vélez* v. *San Miguel, supra,* plaintiff accepted rentals for only two months and it was decided that there had been no renewal of the contract. In *Vidal* v. *District Court, supra,* plaintiff accepted rentals during ten months before

---

[1] I also dissented, without an opinion, in *Díaz* v. *Morales,* 71 P.R.R. 648.

filing the complaint, that is, four months more after the expiration of the six months of the notice required by § 12–A of the Reasonable Rents Act and it was decided that the delay was "clearly justifiable." In dissenting I said: "Based on this reasoning *whenever a plaintiff continues to receive rent for a year or two*, after the expiration of the six months, *and gives reasons which are considered 'clearly justifiable' for the delay, whether or not they are legal reasons*, as long as the plaintiff believes that he is fulfilling his duty, *I presume that it will likewise be decided that. there was no extension of the lease.*" (Italics ours.)

Indeed, in the present case, notwithstanding that the plaintiffs gave notice to the defendant on May 4, 1948, they continued to receive the rentals and it was not until two years later, namely, on May 31, 1950, that they filed the complaint in an action of unlawful detainer at sufferance in the district court, with the aggravating circumstance that they did not set forth any reasons whatsoever which might be considered "clearly justifiable" for such delay. I think that not even the doctrine established in *Vélez* v. *San Miguel, supra,* and ratified in the subsequent cases, is applicable to a case like the one at bar, wherein a plaintiff, without no explanation at all, continues to charge and receive the rentals during the unlimited time which he deems fit in order to then file a complaint in an action of unlawful detainer at sufferance. Is a defendant who has paid rent for more than two years an unlawful occupant (*detentador*)? The best answer to this question may be found in the citations of authorities and cases contained in my dissenting opinion in *Vélez* v. *San Miguel, supra.*

I consider that the lower court lacked jurisdiction to entertain the case and that the judgment should be reversed.