ROSELLÓ HNOS., INC., Plaintiff and Appellant, v. JESÚS FIGUEROA, ET AL., Defendants and Appellees.

No. 11165. Argued April 7, 1954.—Decided May 6, 1955.

*Víctor Rivera Colón* for appellant.  *Rafael Hernández Matos* for appellees.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

This is an action of unlawful detainer filed under the provisions of the Reasonable Rents Act of Puerto Rico, where the plaintiff alleges that it wishes in good faith to withdraw the leased property from the rental market in order to devote it to its own use. The defendants denied the good faith of the owner in taking such action, following the ruling established in our former decision on the question of law previously raised in the same case. *Roselló Hnos.* v. *Figueroa,* 74 P.R.R. 403 (Ortiz) (1953).

After a hearing on the facts, the trial court made the following findings:

"1. The plaintiff corporation is the owner of a property located on Isabel Street of the city of Ponce. There are four commercial premises within this property.

"2. Roselló Hermanos acquired the property in 1951.

"3. When the plaintiff acquired the property the defendants occupied the premises which they occupy at present.

"4. The plaintiff notified the defendants that the property would be withdrawn from the rental market because it was needed for its own use.

"5. The property consists of two different immovables marked numbers 72 and 74 of Isabel St.

"6. The former owner, Miguel Roselló, is the president of the corporation and was the president of the corporation at the time the property was purchased.

"7. The place occupied at present by Roselló Hermanos, Inc. is owned by Josefina Arce de Roselló, wife of Guillermo Roselló, one of the principal stockholders of the corporation.

"8. On January 20, 1953, the Board of Directors of the corporation authorized the manager by agreement to appear and commence these actions of unlawful detainer. At that time the unlawful detainer proceeding had already been filed.

"9. Before Miguel Roselló Manresa acquired this property, it belonged to Juan and Pedro Vestal and to Juan Labrador.

"10. One of the tenants, Alejandro Torres, was interested in the property, and Guillermo Roselló, stockholder of the corporation, who was the attorney in fact of the former owners, offered it to him for sale and gave him a term of three days to decide whether or not he would buy. Torres did not answer the letter where said term was offered although according to Mr. Roselló they had always been willing to sell it.

"11. Miguel Roselló left for Spain and in 1948 purchased from the constituents of his brother the oft-mentioned property for the sum of $30,000.

"12. Miguel Roselló's wife being incapacitated, they simulated an action on execution of a deed against her, which they abandoned and after the corresponding authorization was given, the property was conveyed to the corporation for the price of $30,000 which was paid by the corporation as follows: shares were issued in favor of Miguel Roselló Manresa for the sum of $20,000 and a mortgage note was issued for the difference of $10,000.

"13. Roselló Hnos. Inc. has an outstanding stock of $81,000 of which Miguel Roselló Manresa has $51,000 in shares, thereby being the main stockholder and likewise controling the corporation.

"14. From the time that Miguel Roselló Manresa bought said property in February 1948, he has had difficulty with the tenants because he believed that the rentals were too low and did not compensate for his investment in the property.

"15. Valentina Monforte de Bigas and José Norat Rodríguez were among the tenants occupying premises in said property. The O.P.A. had fixed a monthly rental of $34 on said premises and Mr. Roselló charged them $60.

"16. At the time that Miguel Roselló bought the property, the tenant Alejandro Torres Andrade was responsible for the rentals of the other tenants. Mr. Miguel Roselló asked him to let him deal directly with the other tenants, to which Mr. Torres Andrade consented.

"17. Immediately, Mr. Roselló requested an increase in the rental. Mr. Torres' rental which was $52 per month was increased to $98 and after a reinvestigation of the case, the rent was reduced to $84. This tenant has been occupying that same place for 32 years.

"18. In connection with the other tenants the situation is similar to that of Mr. Torres.

"19. When Miguel Roselló bought said property it was his intention to live on the upper floor.

"20. Although Miguel Roselló alleges to have bought said property for the corporation, the transfer was not made until 1951.

"21. All the tenants have requested Miguel Roselló and the corporation to repair the physical plant of the property because the same is in very bad condition, which Mr. Roselló has refused to do.

"22. The plaintiff corporation has occupied the same premises since 1945 and the business of the corporation has had no fluctuation whatsoever between 1946 and 1950, as may be seen from the annual reports of the corporation, which reveal that no extraordinary substantial progress in the corporate business has taken place. For example, in the years 1946 and 1947 it appears from the report that the corporation had $59,000 in merchandise with assets of $66,000 and in 1950 assets of $58,000 and merchandise worth $43,000. The assets went down $8,000 and the merchandise $16,000."

In view of its findings of fact, the trial court concluded, as a question of law, that the plaintiff had acted in bad faith and based its conclusion on the following reasoning:

"Good faith is not a mere phrase, it is an additional requirement which the plaintiff is bound to prove in addition to the other previous requirements. Good faith being an essential element to be proved in an unlawful detainer action like the case at bar, it is necessary to investigate all the surrounding circumstances, and the question of good faith is a question of fact which must be inferred from the circumstances of each particular case.

"Plaintiff contends that Roselló Hnos. has nothing to do with the actions of Miguel Roselló and since the plaintiff never entered into a lease contract with the defendants and regarded as terminated the one existing at the time when the property was purchased, the actions of Miguel Roselló play no part in determining the good or bad faith of the plaintiff corporation.

"Miguel Roselló, the former owner, not only is the president of the plaintiff corporation but also controls it and is its principal stockholder. Having the control of more than fifty per cent of the shares, the corporation is obviously an instrument of its president, Miguel Roselló. He is not only the first stockholder and president of Roselló Hermanos but he is also its mortgagee and the other stockholders of the corporation are members of his family.

"Although Miguel Roselló and Roselló Hermanos are juridically two different entites, Miguel Roselló and Roselló Hnos. are so intermingled that the action of Miguel Roselló can not be separated from the actions of the corporation itself in connection with the acts performed by either one insofar as the properties involved in this suit are concerned. In the case at bar, the purpose to evict germinates in the mind of Miguel Roselló from the instant that the legal circumstances prevent him from increasing the rentals at his fancy, from the moment that in calculating the rents, he realizes that they do not come up to his expectations of a higher rate of profit in the investment made.

"We have already said that in this same property José Norat had leased from Roselló part of the premises and this man in a period of five years paid the sum of $1,560 in excess of the

rent fixed by the Rent Administration Office. He paid the excess amount of $1,560 which was demanded from him for a five-year contract and the corporation has shown no interest in evicting this tenant; but the defendants did not consent to the demands of Miguel Roselló and on the contrary the rents which had been originally fixed by the Rent Administration Office were reduced at their request.

"Considering all the surrounding circumstances, the Court believes that Miguel Roselló's transaction in favor of Roselló Hermanos conveying to it the property, is but a subterfuge to give the plaintiffs the opportunity to exercise their right to evict the defendants. If the transaction was not made in good faith and the unlawful detainer proceeding is a right which the plaintiffs may exercise by virtue of the acquisition of said property and it was done for such purpose, as the court infers, the present action is lacking the essential element of good faith to which § 12-A-7 refers, bad faith, instead of the good faith which they were bound to prove, having been established. As may be seen, instead of proving the need of the premises for extending the business, plaintiffs destroyed it by their own evidence. The business of the corporation instead of increasing has decreased, as shown by the reports introduced in evidence."

For the foregoing reasons it dismissed the complaint, and the plaintiff has appealed from said judgment. Actually, its contention is that the court committed an error of fact and of law in concluding that it had not acted in good faith.

The law applicable to the case is § 12 of the Reasonable Rents Act of Puerto Rico, as amended by Act No. 201 of May 14, 1948 (Sess. Laws p. 574) which provides: "Regardless of the date of construction or occupancy of both dwellings and business premises, and irrespective of any change of landlord or nominal lessor, the lease contract shall, on the day of expiration agreed upon therein, be compulsorily extended by the lessor at the option of the tenant or lessee without altering any of the clauses thereof, all of which shall be demeed in force. The foregoing is applicable both to written and oral contracts and the extension shall be understood for the terms fixed by § 1471 of the Civil Code, but

never for a period longer than the duration of the emergency declared in this Act. Said extension is also applicable to leased lots whereon buildings belonging to an owner other than the owner of the lot are erected;" § 12-A as amended also by Act No. 201 of May 14, 1948 provides: "As exceptions to the provisions of the preceding section, the lessor may refuse the extension of the lease contract and, consequently, commence unlawful detainer proceedings only in the following cases: . . . (7) Whenever he needs for himself, *in good faith*, the commercial or business premises. In order that this exception may lie, the following conditions shall concur:

"*a*. That the lessor has acquired the property prior to July 17, 1947, the date of effectiveness of The Reasonable Rents Act as regards commercial and business premises, and that the premises were leased for a fixed period, and the term of the lease has expired.

"*b*. That the lessor has not in the same locality a business of the same kind as the one operated by the tenant or similar thereto established in a building of his own or a building belonging to another.

"*c*. That the lessor is interested in the premises to occupy them personally with a business exclusively of his own.

"*d*. The mere fact that the lessor wishes or needs to extend his business shall not be sufficient cause to justify his necessity of occupying the premises he may have leased.

"*e*. The lessor shall give the affected tenant authentic written notice of his need to occupy the premises for himself, and shall require said tenant to vacate the same, all at least six months in advance of the date when the tenant receives the notice to vacate.

"*f*. If within ninety (90) days after the premises are vacated, and without just cause, the same are not occupied and opened to the public by the lessor, the tenant may recover from the lessor indemnification for the damages actually sustained by reason of the ejectment, in a sum which shall never be less than three months' rent, plus costs and plaintiff attorney's fees. If at any time during the twelve months following the date on which the tenant vacated the premises, the lessor assigns or leases same

to another person, he shall indemnify the tenant for the damages caused him, which shall be fixed at a sum which shall in no case be less than two hundred (200) dollars, or six months' rent, whichever is greater, plus costs and plaintiff attorney's fees as fixed by the court. The foregoing is without prejudice to the liability fixed for the lessor by § 12-J."

In our decisions subsequent to the decision of *Rivera* v. *R. Cobián Chinea & Co., Inc.*, 181 F. 2d 974, (Maris), (Magruder), we have recognized the right of a landlord to withdraw the premises from the rental market when he wishes in good faith to devote said premises to his own use: *Rodríguez* v. *Alvarez*, 70 P.R.R. 932, 936 (*Todd, Jr.*) (1950); *Roselló Hnos.* v. *Figueroa*, 74 P.R.R. 403, 409 (*Ortiz*) (1953); *Heirs of Pérez* v. *Gual*, 75 P.R.R. 361, 366 (*Pérez Pimentel*) (1953); *Mouriño* v. *Superior Court*, 76 P.R.R. 256, 258–9 (*Belaval*) (1954); *Heirs of Pérez* v. *Gual*, 76 P.R.R. 898.

As to the good faith, in the case of *Rodríguez* v. *Alvarez*, 70 P.R.R. 932, we held: "The only one with which we are met here involves the rule to be followed in order to determine the good faith of the plaintiff. It is the Act itself which in its § 12-A-7, *supra*, details the circumstances that must concur, which must be alleged and proved in order that the action may be successful." Said statement was somewhat in contradiction with the decision in *Rivera* v. *R. Cobián Chinea & Co., Inc.*, 181 F. 2d 974, inasmuch as each one of the limitations imposed by § 12-A-7 was a true restriction to the exercise of the constitutional right on the part of the owner. In the case of *Roselló Hnos.* v. *Figueroa*, *supra*, at page 410 we reconciled the rulings established in *Rodríguez* v. *Alvarez*, *supra*, and in *Rivera* v. *R. Cobián Chinea & Co., Inc.*, *supra*, and we established that it is enough to prove (1) that he has given notice to the tenant six months in advance of the date when the tenant receives the notice of eviction, (2) that the term of the contract had expired and (3) that the owner of the property wanted in good faith

to withdraw the leased property from the rental market to occupy it personally with a business of his own, in order for eviction to be successful. In said case, however, we did not define the concept of good faith.

It was in *Heirs of Pérez* v. *Gual, supra*, at page 367, that we held that the burden is on plaintiff to prove his good faith defining it as meaning: "honestly, without fraud, collusion, or deceit" and requiring that the evidence show "that plaintiffs' action has not been motivated by any intention other than to recover the premises for the purpose of operating their business" (P. 368). In that same case we held that in order to conclude that the plaintiff has acted in bad faith, the evidence must establish that the cause of the eviction was a reprisal against the tenant. (P. 369).

Good faith, when used in its generic acception, is one of the elements of equity and therefore compels us to examine a person's demeanor in order to determine whether his actions respond to the equitable concept of justice as different from the strict concept at law. It is the cleanliness of purpose which satisfies the moral conscience of the judge. As used in the Reasonable Rents Act of Puerto Rico, it does not have the juridical sense that said good faith has in the Civil Code of Puerto Rico, when connected with possession, contract or prescription, but rather the sense it has in equity. The confusion which seems to exist on this particular issues from the legislative history of our law.

The basic law is Act No. 464 of April 25, 1946, the sole aim of which was to complement the rent provisions of the Federal Emergency Price Control Act of 1942, approved by the Congress of the United States, Public Law No. 420 of January 29, 1942, 56 Stat. 23. The amendment by addition made to our Act by virtue of Act No. 415 of May 14, 1947, does not alter its complementary purpose. It is when said Act No. 464 is amended, by virtue of the new provisions of Act No. 201 of May 14, 1948 that certain modalities of the

*Ley de Arrendamientos Urbanos* of December 31, 1946 of Spain are added: Medina and Marañón—*Leyes Civiles de España—Leyes, Decretos, Ordenes de 1946*—558 (Instituto Editorial Reus 1949 ed.). Compare § 12-12 A, 12-C, 12-D, 12-E, 12-F, 12-G of the Reasonable Rents Act, as amended in 1948, with § § 70, 76, 149–1ª, 149–7ª, 149–2ª, 149–4ª, 149–5ª, 77, 78, 776, 82, 85, 90, 90-b, 92, 90-a, 91, 76-2-a, 102-a, 102-b, 103, 106, 104, 71, 72, 73, 74 and 86 of the *Ley de Arrendamientos Urbanos* of December 31, 1946 of Spain and a fairly proximate tabulation of the equivalences of both statutes will be had.

Insofar as the proof of good faith is concerned, § 12-f of Act No. 464 of 1946 as well as § 12-A-7 of Act No. 201 of May 14, 1948 have the same requirement. The *Ley de Rentas Urbanas* of Spain of December 31, 1946, does not require proof of said good faith because the exception fixes certain conditions, some of them included in § 12-A-7 of our Act No. 201, which the lessor must establish in order to exercise his right to evict his tenant without need of further showing of good faith. As may be seen, the Spanish law preferred to fix statutorily the elements of good faith rather than leave its determination to the equitable discretion of the judge. None of this is unusual in the Spanish Civil Law, for it is well known that said law always tends to define the contents of each concept. Contrariwise, the first American statute on the specific point in issue—§ 209 (*a*) (5) of Public Law No. 464 of March 30, 1948: 62 U. S. Stat. 93—does not fix the elements of good faith, leaving it to the free determination of the judge.

Section 12-A-7 of Act No. 201 of May 14, 1948 of our laws seems to adopt both tendencies: on the one hand it imposes on the judge the obligation to inquire into the good faith of the motion of eviction and on the other hand it denies the exception to the automatic extension of time unless certain conditions precedent concur. In the first case decided

by this Court after the amendment of 1948, *Rodríguez* v. *Alvarez*, 70 P.R.R. 932 (1950), we adopted the criterion that the Act itself details the circumstances that must concur in order to prove the good faith of the plaintiff. After the decision in *Rivera* v. *R. Cobián Chinea & Co. Inc.*, 181 F. 2d 974 (1950), we were compelled to hold that the conditions precedent at law constituted "limitations and restrictions which are additional to the exercise of the constitutional right of the owner to evict a tenant when the owner's bona fide purpose is . . . that of withdrawing the premises from the rental market to devote them to its own use." At present we can but conclude that the determination of good faith required by § 12-A-7 of our Reasonable Rents Act is the good faith recognized by equity: *Heirs of Pérez* v. *Gual*, *supra*.

The plaintiff and appellant asks us to apply the presumption of good faith established in § 364 of the Civil Code of Puerto Rico. As we have already seen, said application is not possible. The good faith, established as a condition for evicting the tenant, must be proved by the plaintiff. In equity the plaintiff and appellant must convince the judge that its sole purpose is to obtain the leased premises to devote them to its own use and not to oust the tenant. It is, therefore, a question of proof of intention which must be inferred from all the surrounding circumstances of the lease contract, and based on the conduct of the parties prior and subsequent to the notice to vacate the premises. As in every case where it is necessary to establish proof of intention, the court must be liberal in the reception of the evidence although it should always aim to establish the relation of cause and effect in its findings of fact or in its conclusions of law in such a way that the intentional inquiry be not too remote or improbable.

██ The plaintiff-appellant tries to convince us that the proof of such good faith constitutes: "a true restriction

of the constitutional right of the owner of real property to occupy his property." This is not the case. Neither the Constitution of the United States: *Buchanan* v. *Warley*, 245 U. S. 59, 74, 75, 62, L. ed. 149, 161 (*Bay*) (1927); *Block* v. *Hirsh*, 256 U. S. 135, 155–156, 65 L. ed. 865, 870, 871, (*Holmes*) (1921); *Nebbia* v. *New York*, 291 U. S. 502, 523, 78 L. ed. 940, 948, (*Roberts*) (1934); *Morehead* v. *New York ex rel Tipaldo*, 298 U. S. 587, 628, 80 L. ed. 1347, 1364, (*Butler*) (1936); *Woods* v. *Miller*, 333 U. S. 138, 146, 92 L. ed. 596, 603, (*Douglas*) (1948), nor the Constitution of the Commonwealth of Puerto Rico, nor § 280 of the Civil Code of Puerto Rico has recognized the right of ownership as an absolute right, but rather a limited one and therefore subject to regulation in favor of the public welfare. In the course of the entire debate on the constitutionality of the Federal Emergency Price Control Act of 1942; *Bowles* v. *Willingham*, 321 U. S. 503, 88 L. ed. 892 (*Douglas*) (1944), as well as the Federal Housing and Rent Act of 1947, *Woods* v. *Miller*, 333 U. S. 138, 92 L. ed. 596 (*Douglas*) (1948) and the Federal Housing and Rent Act of 1949, *Woods* v. *Durr*, 176 F. 2d 273, (*Maris*) (1949), and the Reasonable Rents Act of Puerto Rico of 1946, *Rivera* v. *R. Cobián Chinea & Co.*, 181 F. 2d 974 (*Maris*) (1950), and the Reasonable Rents Act of Puerto Rico of 1948, cases from Puerto Rico above cited, the possibility was never suggested that the landlord had an absolute right to withdraw from the rental market even if it was in bad faith. Said conduct would be in open conflict with the state of emergency declared in the Reasonable Rents Act of Puerto Rico and with the war power of the United States Congress. Furthermore, it would be in open conflict with the control that the State has over the remedies in any national crisis: *Home Building & Loan Association* v. *Blaisdell*, 290 U. S. 398, 440–44, 78 L. ed. 413, 430–32, (*Hughes*) (1934).

The confusion seems to arise from § 4 (d) of the Federal Emergency Price Control Act of 1942 which provided: "Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent"; also from § 302 of the Federal Housing and Rent Act of 1948 which provided: "Nothing in this Act or in the Housing and Rent Act of 1947, as amended, shall be construed to require any person to offer any housing accommodations for rent." In order to understand clearly the intention of Congress in adopting said provision, it will be enough to refer to Senator Cain's report in the session of February 20, 1948, of the Congress of the United States—94 Congressional Record—Part Two 1458: ". . . Moreover, I cite the experience of a man named Fliss, who owned and operated some apartments in the city of Chicago. It is reported that he was not in a financial position to make needed repairs to the boilers in his establishment and, therefore, in April, 1947, he notified his tenants that after October of that year he would collect no more rent from them. In due course, however, Mr. Fliss was served with a mandatory injunction obtained in the Federal court upon the petition of the Housing Expediter, requiring him to repair the boilers. For failure to do so he was thereafter cited for contempt and upon conviction sentenced to a prison term pending his compliance with the mandatory injunction. The net result is that through this procedure, a landlord may be compelled to continue in the business of renting housing accommodations despite his desire to cease that business. While to this extent the landlord is treated as if he were engaged in a public utility, as the 1947 act is administered, he is not assured of the opportunity to make a reasonable profit. Sections 205 and 302 are intended to remedy this situation by allowing a landlord *in good faith to regain possession of his housing accommodations* if he in good faith desires to withdraw them from the rental market, and by

providing that he shall not be required to offer them for rent."

As may be seen, these two provisions were merely intended to consecrate the landlord's right to withdraw from the rental market, when he in good faith did not wish to continue in the rental market. A landlord may adduce several reasons for not binding himself to continue in the rental market, but all of them are subject to the inquiry into good faith. In order to cope with most of the objections which a landlord may adduce for not continuing in the rental market, the United States Congress, after 1942, adopted a system of economic incentives which included the following measures: (1) rent adjustments according to the new tax and investment realities, (2) the progressive decontrol of certain zones where the freezing of prices was unnecessary; (3) the governmental stimulus towards a housing development in a large scale not subject to the freezing of prices. The Legislative Assembly of Puerto Rico adopted the same policy.

■■ Although the factual conclusions as to the proof of intention are considered as mixed findings of fact and conclusions of law, or bare conclusions of law, and therefore are not binding on the appellate Court, we agree with the findings on which the trial judge based his inference of bad faith. It suffices to consider that while, on the one hand, the lessor asks the defendant tenants who resisted its demands for overprice to vacate the premises because it needs them for its own business, on the other hand it enters into a contract for five years with another tenant who is not a party to the suit, charging him in advance the overprice for the whole term of the contract, to realize that said conduct can not satisfy the moral conscience of the judge.

The judgment appealed from will be affirmed.

Mr. Justice Sifre concurs in the result.