EROILDA COLÓN VÉLEZ, Plaintiff and Appellant, *v.* GUADALUPE LEBRÓN, Defendant and Appellee.

No. O-67-78. Decided April 1, 1969.

*Jorge Souss* for appellant. Appellee did not appear.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Torres Rigual.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Plaintiff-appellant filed a complaint in an action for unlawful detainer in the District Court, San Juan Part, to recover the possession of certain business premises to devote them to her own use. The lease contract was a month-to-month oral contract. Plaintiff appeared in the capacity of administrator of the property belonging to the Heirs of Ignacio Colón Fernández, and as one of said Heirs, owners of the property. Defendant-appellee denied the complaint and alleged as a special defense that the same did not establish facts constituting a cause of action. The case was heard on the merits and the District Court rendered judgment sustaining

the complaint in the action for unlawful detainer. The court made an elaborate statement of the facts which it considered proved, and in the light of said facts and of our doctrine as it applied the same, it concluded that the action for unlawful detainer was appropriate.

The question in issue was whether or not there was good faith in the judicial actions taken by plaintiff to recover the business premises. Edificio Colón is situated on a corner on Ponce de León Avenue and Colón Street at Stop 21. The first story is divided into two business premises. One is spacious, appropriate for a large business, facing Ponce de León Avenue, and the other, small, completely separate from the former, facing Colón Street. Defendant sought to establish his allegation of lack of good faith relying on the fact that the spacious premises had been vacated and plaintiff could have devoted it to her business. According to the findings of fact of the District Court, the larger premises, as a matter of fact, were never vacant at the disposal of the owners. The tenant of said premises transferred the business and its stock to a third person who continued to occupy the same. The owners then required or accepted from the third person a determined amount of money for "the key." What actually happened was a change of tenant, in the manner afore-stated, without the premises having been vacated at any time whatsoever.

The judgment on the unlawful detainer proceeding having been appealed from before the Superior Court, San Juan Part, the latter reversed. The court stated:

"JUDGMENT:—The ground for unlawful detainer invoked reads: '6: Whenever he needs for himself, in good faith, the commercial or business premises *if he has not another premises in the same building.*' Italics ours. Said section requires that the landlord shall give tenant notice of *his need to occupy the premises for himself.*

"In the case at bar the landlord commenced to take steps for the unlawful detainer proceedings and before she filed the ac-

tion some premises in the same building, appropriate for her purpose, came to be at her disposal. As it appears from the recital of the case the evidence on said point was as follows:

'Martínez' premises were previously leased by Alberto Soto and the latter paid the same rent paid now (he believes it is $136). The premises occupied by defendant rent for only $45 and she cannot prefer the other premises since that would reduce the amount of the heirs' income. She would prefer to establish her business facing the avenue, that is, in the premises occupied by Martínez, since the one occupied by defendant faces Colón Street. Soto moved voluntarily, since he sold the stock to Martínez. We asked Martínez a bonus of $15,000 for "the key" to be paid in the course of five years. That she did not know that said contract was in violation of the public policy, for she was advised by her attorney. That five sister-heiresses are going to establish the business. Aixa, single and resident of Chicago, is the most experienced in the clothing business, and is going to advise them.

'To questions addressed by her attorney she answered that she had not signed lease contracts after Moraima married. That the transaction with Martínez was carried out after they had planned to establish their business in the premises occupied by defendant, and that when the letter was sent requesting him to vacate the premises, she did not know that Soto was going to sell and vacate his premises. That she and four of her sisters have sold dresses at their homes.

'That Guadalupe's premises are more convenient because they are smaller, the rental is less and the operation expenses would be less; which would greatly benefit a new business.'

"In the case of *Roselló Hnos.* v. *Figueroa,* 78 P.R.R. 250, it was stated: 'the good faith, as used in the Act, does not have the juridical sense that said good faith has in the Civil Code, but rather the sense it has in equity; and is based on the conduct prior and subsequent to the notice to vacate.'

"The evidence shows that the premises which were at the disposal of the landlady were more spacious and better located than the ones they desire. The reason for not using those premises is that the former's rent is higher than the latter's and because of the offer of $15,000 for 'the key', in five promissory notes in the amount of $3,000 each, each note to be paid annually.

"We understand that by reason that plaintiff had other premises at her disposal and had chosen to 'sell the key' she has lost her right to exercise the present action of unlawful detainer under subdivision 6 of § 12B of the Reasonable Rents Act, besides denying the existence of good faith of the Act.

"The judgment rendered is reversed and another will be rendered dismissing the complaint, consistent with any other pronouncement of law."

 We do not construe the applicable law in the sense that the owner of a building divided into different and separate business premises, who, in good faith, needs one of the premises for his own use, may not choose the one which serves his material and economic needs. The provision of law in the sense that the landlord may refuse the extension of the lease contract and commence unlawful detainer proceeding whenever he needs for himself, in good faith, the commercial or business *"premises"* if he has not other *"premises"* in the same building, should be interpreted in the sense that it refers to other premises of the same nature and which serve the same purpose as the premises needed. A different construction might lead to an unconstitutional application of the law. The enjoyment of the property right involves the enjoyment of its economic worth. In the case at bar the owner needed for her own use small and compact premises for her small business. To compel her to use therefor the larger business premises, resulting in more costly operating expenses, if they had been vacant, would deprive her of the right to have the larger premises in the rental market with the corresponding greater economic benefit and compel her to operate her small business with greater operating expenses because of its greater space. She would be compelled to suffer economic waste. But according to the conclusion of the District Court which is supported by the evidence, these larger premises were never actually vacant.

 A landlord may withdraw his property from the rental market. Rent laws protect the tenant while the prop-

erty is in the rental market. They cannot preclude the landlord from withdrawing it in good faith from the rental market for his own use.

■ As it was stated in *Rivera v. R. Cobián Chinea & Co.*, 181 F.2d 974 (1st Cir. 1950), the fundamental purpose of the legislation on reasonable rents was to regulate the rents, so that they would be reasonable in view of the public emergency brought about by the shortage of premises; and the plain restrictions on actions of unlawful detainer constituted necessary measures leading to the primary purpose of the legislation. (181 F.2d 977, 978, 979); *Roselló Hnos. v. Figueroa*, 74 P.R.R. 403 (1953), affirmed in *Roselló Hnos., Inc. v. Figueroa*, 233 F.2d 248 (1st Cir. 1956); *Segarra-Serra v. Scott*, 242 F.2d 315 (1st Cir. 1957), reversing *Segarra-Serra v. Scott*, Judgment (Per Curiam) of April 30, 1956;[1] *Heirs of Pérez v. Gual*, 75 P.R.R. 361 (1953); *Galiñanes Hnos. v. Sup. Ct.; Univ'l Furniture, Int.*, 77 P.R.R. 836 (1955); *Ponce Federal Savings v. Castro*, Judgment of May 31, 1967; *Tapia Matos v. Figueroa Castro*, Judgment of July 14, 1967; *Rivera v. Ward*, Judgment of November 8, 1968. In *Segarra-Serra v. Scott, supra*, the Court of Appeals First Circuit held that the landlord has the right to recover possession of the premises so long as he *honestly* desires them for his own use regardless of his motives.

However, if to obtain the eviction the landlord resorts to subterfuge or falsehood to eliminate a determined tenant, his honest purpose not being to withdraw the premises from the rental market so as to devote them to his own use, the Act itself imposes the pertinent punishments, penalties and indemnity.

The facts proved in this case do not support the lack of good faith in the constitutional concept for cases concerning rent.

---

[1] It is not published in P.R.R.

The judgment of the Superior Court, San Juan Part, dismissing the complaint will be reversed, and the case will be remanded to said court with instructions to render another affirming the judgment of the District Court which sustained the complaint in the action for unlawful detainer.