### RIVERA v. R. COBIAN CHINEA & CO., Inc.

No. 4434.

United States Court of Appeals
First Circuit.

May 19, 1950.

Magruder, Chief Judge, dissented.

Francisco Ponsa Feliu, San Juan, P. R., for appellant.

No counsel appeared for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MARIS, Circuit Judge.

■ This case presents the question whether Section 12 of the Reasonable Rents Act of Puerto Rico[1] is valid in so far as it denies to the owner of a building used for business, commercial or industrial purposes the right to maintain an action of unlawful detainer against his tenant in order to recover possession of the building for the purpose of withdrawing it from the rental market and devoting it to his own use. The act was approved on April 25, 1946, and its provisions with respect to buildings and premises devoted to business, commercial and industrial purposes were put into force on July 17, 1946[2] by resolution of the Executive Council of Puerto Rico pursuant to authority conferred upon the Council by Section 27 of the act.

■ On April 28, 1947 the plaintiff acquired by purchase premises No. 59 Dr. Veve Street in the urban portion of the Municipality of Bayamon. The property consisted of a lot on which a two story business building was erected and on the date of purchase its ground floor was rented under a lease contract for an unspecified term to the defendant as a commercial establishment at a rental of $125 a month. On February 9, 1948 the plaintiff wrote to the defendant terminating the lease contract on February 29, 1948. The defendant, however, refused to vacate the premises and the plaintiff filed a complaint in a civil action of unlawful detainer in the District Court for the Judicial District of Bayamon. The defendant moved to dismiss the plaintiff's complaint on the ground that it did not state a cause of action of unlawful detainer, relying upon Section 12 of the Reasonable Rents Act which prohibited the bringing of an action of unlawful detainer except in the cases specified in the act, of which this was not one. The District Court granted the motion to dismiss and on appeal the Supreme Court of Puerto

1. Act of April 25, 1946, No. 464, Laws of Puerto Rico 1946, p. 1326.

2. There seems to have been some confusion with respect to the date of taking effect of these provisions. In the Act of May 14, 1948, No. 201, Laws of Puerto Rico 1948, p. 574, which amended sections 6, 12 and 12-A of the Reasonable Rents Act, the date of effectiveness is given in subsection 7a of amended Section 12-A as July 17, 1947. The plaintiff asserts that this was an error and he has furnished this court with a copy of a resolution of the Executive Council, certified by its secretary, declaring the provisions in question to be effective on and after 12:01 A.M. of July 17, 1946. We take judicial notice of the date.

Rico, one justice dissenting, affirmed the judgment,[3] holding that the Reasonable Rents Act prohibited the bringing of the action and that in so doing the act did not infringe the plaintiff's constitutional rights. The plaintiff thereupon brought the case here by appeal. Since it involves the validity of Section 12 of the Reasonable Rents Act under the Constitution and the Organic Act we have jurisdiction under Title 28 U.S.C.A. § 1293.

As the declarations of policy set out in Section 1 disclose, the Reasonable Rents Act was passed by the Legislature of Puerto Rico to deal with the public emergency arising from the inadequate supply of dwelling houses and business buildings in the island. The basic purpose of the act was to prevent landlords from obtaining unfair, unreasonable and oppressive rents which the serious shortage made it possible for them to exact. It sought to accomplish this purpose by freezing rents at the level which prevailed on October 1, 1942, granting to the Administrator provided for by the act the power in individual cases to change this basic maximum rent to such reasonable rent as might be appropriate under the standards established in the act.

Briefly summarized section 12 of the act, as originally enacted, provided that during the existence of the emergency and as long as the tenant pays the basic rent or the reasonable rent fixed by the Administrator, as the case may be, the landlord may not prosecute an action of unlawful detainer against the tenant to recover possession of the rented premises even though the term of the lease contract has expired, except in the following cases specified in the section, namely: (a) when the tenant fails to pay the rent; (b) when the tenant uses the rented premises for illegal or immoral purposes without the landlord's knowledge;

(c) when the tenant sublets the property without the authority of the landlord; (d) when the landlord desires in good faith to recover the premises in order to demolish them with the intention of constructing a new building; (e) when the tenant causes malicious or considerable negligent damage to the leased property, and (f), in the case of a dwelling not habitually used for rent, when the landlord seeks in good faith to recover possession of it for his immediate personal use as a place of residence. It will be seen that none of these exceptions applies to the plaintiff's case.[4] Section 12, therefore, barred the prosecution of his suit if its provisions as applied to him were valid.

Section 15 of the act provides that every person acquiring a leased property shall be subject to the terms of the act and shall not claim any rights other than those therein established for the original owner. The defendant asserted in its motion to dismiss the complaint that since the plaintiff had acquired the property in question after the Reasonable Rents Act became effective he was restricted by the provisions of Section 15 to the rights which the act gives an owner and might not, therefore, contest the validity of those restrictions. The Supreme Court, however, held that the plaintiff has standing to assail the constitutionality of the act and we agree with its view in this respect. Essentially the same question has arisen as to the standing of a purchaser of real estate to attack the constitutionality of a previously enacted zoning ordinance applicable to his land and his right to do so has been upheld in numerous cases upon the ground that he stands in the place of his grantor and, therefore, normally has the same right to attack the ordinance which his grantor had.[5] We, therefore, turn to the consideration of the con-

3. —— Puerto Rico ——.

4. We need not refer at this point to the additional exceptions added by the Act of May 14, 1948, No. 201, which transferred all the exceptions from Section 12 to a new section 12-A, which had been added by the Act of May 14, 1947, No. 424, Laws of Puerto Rico 1947, p.

862, since they will be discussed later in this opinion.

5. Ignaciunas v. Risley, 1923, 98 N.J.L. 712, 719, 121 A. 783, 786; Continental Oil Co. v. City of Twin Falls, 1930, 49 Idaho 89, 286 P. 353, 356; Forbes v. Hubbard, 1932, 348 Ill. 166, 180 N.E. 767, 771; Harmon v. City of Peoria,

stitutional questions which the plaintiff raises.

At the outset we may eliminate a number of questions which he does not raise. He concedes that the Legislature of Puerto Rico has the same power as the legislature of a state to regulate the renting business and to fix maximum rents, this being within the police power conferred upon the Legislature by the Organic Act.[6] He also concedes that the Legislature has the right to regulate and control actions for unlawful detainer as an incident to the control of maximum rents. Likewise he concedes that the Legislature may exercise these powers with respect not only to housing accommodations but to premises dedicated to business, commercial and industrial uses as well. His sole contention is that the Legislature of Puerto Rico has exceeded its power in prohibiting a landlord from recovering possession of his property at the expiration of the term of a lease contract when he desires in good faith to do so in order to withdraw the property from the rental market and devote it to his own use as a business establishment.

 The plaintiff strongly urges that in so doing by Section 12 of the Reasonable Rents Act the Legislature has been guilty of an arbitrary and unreasonable exercise of its police power which has deprived him of his property without due process of law and which has amounted to the taking of his property without just compensation in violation of the Fifth Amendment to the Constitution and of Section 2 of the Organic Act. We think that this contention must be sustained.

 Undoubtedly, as the plaintiff concedes, the Legislature had the right in view of the public emergency brought about by the shortage in dwellings and business buildings to regulate the rents charged by landlords for properties of that kind in the rental market.[7] In carrying out this objective it had the right to adopt such measures as it thought appropriate so long as they had a reasonable relation to the end sought to be achieved and were neither arbitrary nor discriminatory.[8]

 In this connection it was within the power of the Legislature to regulate the procedure for the eviction of tenants and recovery of possession by landlords in view of the fact that such procedure might be availed of by landlords to circumvent the maximum rent ceilings which it was the primary purpose of the Legislature to impose.[9] We think that it was the purpose of Section 12 of the Reasonable Rents Act thus to implement the enforcement of the rent ceilings imposed by the act. We, therefore, do not have to consider whether the Legislature might under the police power impose such absolute prohibitions against eviction as are here involved in an act designed to stabilize in an emergency the possession of leased premises by the tenant occupants. When in the act before

---

1940, 373 Ill. 594, 27 N.E.2d 525, 529; City of Miami Beach v. Ocean & Inland Co., 1941, 146 Fla. 145, 200 So. 402, 403.

6. Act of March 2, 1917, c. 145, 39 Stat. 951, 48 U.S.C.A. § 731 et seq.

7. Block v. Hirsh, 1921, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165; Marcus Brown Holding Co. v. Feldman, 1921, 256 U.S. 170, 171, 41 S.Ct. 465, 65 L.Ed. 877.

8. Nebbia v. People of State of New York, 1934, 291 U.S. 502, 54 S.Ct. 505, 78 L. Ed. 940, 89 A.L.R. 1469.

9. See Taylor v. Bowles, Em.App.1944, 145 F.2d 833, construing the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq. The Reasonable Rents Act was designed to continue in Puerto Rico the policies and purpose of the Emergency Price Control Act as to rents. Thus in the Statement of Motives appearing in Section 1 of the act it is said: "It is the purpose of this Act to supplement the provisions in regard to rents of the Emergency Price Control Act of 1942, enacted by Congress on January 20, 1942, as applied to Puerto Rico, with the same policies and the same purpose of preventing speculation in rents, in such aspects of the rental problem as are of public interest in Puerto Rico, and are not covered by the Federal Act, such as the lease of houses and buildings used for businesses and commercial and industrial purposes." Laws of Puerto Rico, 1946, No. 464, at page 1330.

us the Legislature sought to prohibit a landlord who in good faith desires to do so to withdraw his property wholly from the rental market in order to devote it to his own personal use it went beyond the bounds of the police power and adopted an expedient which did not have any reasonable relation to the establishment and maintenance of the rent ceilings which it was the object of the Reasonable Rents Act to accomplish.[10] It is true that the Legislature might impose reasonable regulations with respect to the recovery of possession by such landlords in order to prevent evictions which might tend to defeat the object of the act. But we think that it was beyond its power in enacting the Reasonable Rents Act absolutely to prohibit them from recovering possession of their properties from tenants the terms of whose lease contracts had expired when they desired possession solely for their own use and not for the purpose of rerenting to another tenant. Such legislative prohibition would appear to be so arbitrary in relation to the object sought to be attained by the act as to amount to a deprivation of the landlord's property without due process of law.

Moreover the effect of Section 12 is to compel such a landlord to dedicate his property indefinitely to the rental market and to prevent him, except with the consent of his tenant, from having the use of it himself.

For the Legislature to compel the plaintiff against his will to keep his property in the rental market and to prevent him from using it in his own personal business for the duration of the emergency would appear to be a "taking" of the property for which just compensation has not been provided. It is significant to observe that in order to avoid these very objections the Congress of the United States in enacting the Emergency Price Control Act of 1942 provided in Section 4(d) that "Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent."[11] Likewise similar provision was made in the Housing and Rent Act of 1947, as amended by the Acts of 1948 and 1949.[12]

We hold, therefore, that Section 12 of the Reasonable Rents Act of 1946 violates the Fifth Amendment to the Constitution and Section 2 of the Organic Act to the extent that it prohibits a landlord from prosecuting an action of unlawful detainer against a tenant the term of whose lease contract has expired when the landlord desires in good faith to recover the leased premises for the purpose of withdrawing them from the rental market and devoting them to his own use. The case must accordingly go back to the District Court for the reinstatement and further consideration of the plaintiff's complaint.

---

10. See Woods v. Durr, 3 Cir., 1948, 170 F.2d 976.

11. Act of January 30, 1942, c. 26, Title I, § 4 (d), 56 Stat. 28, 50 U.S.C.A.Appendix, § 904 (d).

In Wilson v. Brown, Em.App.1943, 137 F.2d 348, Judge Magruder, speaking for the Emergency Court of Appeals, said, 137 F.2d 352: "There is, in fact, no appropriation of the housing accommodations at all, and so far as there is a narrow restriction on their use, it is for a very limited period. 'A limit in time, to tide over a passing trouble, well may justify a law that could not be upheld as a permanent change.' Block v. Hirsch, 1921, 256 U.S. 135, 157, 41 S.Ct. 458, 460, 65 L.Ed. 865, 16 A.L.R. 165. Furthermore, the Act does not require the landlord to continue his property in the market for housing accommodations. Section 4 (d) of the Act provides: 'Nothing in this Act shall be construed to re-

quire any person to sell any commodity or to offer any accommodations for rent.' In accordance with this statutory provision, the regulation now in question provides that a landlord may evict a tenant whose lease has expired if he 'seeks in good faith not to offer the housing accommodations for rent.' The landlord is thus free to occupy the property himself, or devote it to some commercial enterprise, or utilize it in any other way. This serves to emphasize that there has been no 'taking' of his property in the constitutional sense."

See also Bowles v. Willingham, 1944, 321 U.S. 503, 517, 64 S.Ct. 641, 88 L.Ed. 892.

12. Act of March 30, 1948, c. 161, Title III, § 302, 62 Stat. 99, 50 U.S.C.A. Appendix, § 1903; Act of March 30, 1949, c. 42, Title III, § 301, 63 Stat. 29, 50 U.S.C.A.Appendix, § 1907.

One further matter should be mentioned, however. By the Act of May 14, 1948,[13] the six exceptions formerly appearing in Section 12 were transferred to and two additional exceptions were added to a new Section 12-A which had been added to the Reasonable Rents Act by an act of 1947.[14] One of the new exceptions to the ban of Section 12 which was thus added was subsection 7 which provides that whenever a lessor needs for himself, in good faith, commercial or business premises leased to a tenant he may institute unlawful detainer proceedings if, inter alia, he acquired the property prior to the date of effectiveness of the Reasonable Rents Act and the premises were leased for a fixed period. The plaintiff asserts, however, that this new exception does not afford him relief and the Supreme Court of Puerto Rico acquiesced in that view. The plaintiff would appear to be right as to this on two grounds. One is that in spite of an ambiguity in date which appears in the new statute it appears that he did not acquire the property in question until after the effective date of the act.[15] The other is that it appears that the defendant's lease is not for a fixed period.[16] However, the applicability of this new exception will be for the District Court to determine upon remand. In any event the plaintiff may not be denied relief solely by virtue of the bar of Section 12 of the Reasonable Rents Act if he establishes to the satisfaction of the court that the term of the lease contract has ended and that he intends in good faith to withdraw the property from the rental market and to devote it to his own personal business.

The judgment of the Supreme Court of Puerto Rico will be reversed and the cause will be remanded to that Court for further proceedings not inconsistent with this opinion; the appellant to recover costs on appeal.

MAGRUDER, Chief Judge (dissenting).

In dealing with the emergency resulting from the shortage on the rental market of housing accommodations and commercial buildings, the legislature of Puerto Rico had undoubted power to impose reasonable controls upon rents. It has done that in the Reasonable Rents Act, employing the freeze technique to stabilize rents at "the levels that prevailed on October 1, 1942", § 3, with broad powers in an administrator to issue individual adjustment orders, subject to judicial review, § 6. To that extent the legislature has more or less followed the pattern of the Emergency Price Control Act of 1942, under which Congress merely undertook to impose rent controls, with authority in the Price Administrator to regulate evictions only in so far as reasonably deemed appropriate to safeguard the established rental ceilings as against manipulative or evasive practices. See Taylor v. Bowles, Em.App. 1944, 145 F.2d 833, 834.

But I do not think that the police power of the legislature in the premises is exhausted by the imposition of controls upon rents. The legislature here, as is apparent from the face of the Act, has done something more; in § 12 it has undertaken, during the emergency, to assure to *existing* tenants a stability of tenure, with the exceptions noted in the opinion of the court, even as against a landlord who, at the expiration of the lease, desires to withdraw the property from the rental market. This would seem to be a reasonable emergency provision to avert dislocations of the economy which might result from a destruction of going concerns if tenants operating existing businesses had to move out with no substitute place available. Of course the present case raises no question as to the power of the legislature generally to force an individual to engage in a controlled busi-

---

13. Act of May 14, 1948, No. 201, Laws of Puerto Rico 1948, p. 574.

14. Act of May 14, 1947, No. 424, Laws of Puerto Rico 1947, p. 862.

15. See note 2 supra. The effective date was July 17, 1946 and the defendant acquired the property on April 28, 1947.

16. It is asserted in paragraph 2 of the complaint that the premises were rented to the defendant "for an unspecified term". In paragraph 2 of the answer it is admitted that they were rented "without a fixed term".

ness against his will; nor as to the power of the legislature to evict owners and force them to *place* dwelling houses or commercial buildings on the rental market.

It is true that the legislature, in § 1 of the Reasonable Rents Act, under the caption "Statement of Motives", laid primary emphasis upon a purpose to supplement the Emergency Price Control Act of 1942 "with the same policies and the same purpose of preventing speculation in rents, in such aspects of the rental problem as are of public interest in Puerto Rico, and are not covered by the Federal Act, such as the lease of houses and buildings used for businesses and commercial and industrial purposes." A legislative recital of purpose may properly be resorted to in interpreting an ambiguous substantive provision of the law. But I know of no principle upon which a substantive provision, crystal-clear in meaning, may be struck down by the courts merely because such provision has no reasonable relation to the accomplishment of any purpose explicitly declared in the preliminary "Statement of Motives". Such declarations of legislative purpose, as contained in a preamble, or in an introductory section of the Act, may often be not all-inclusive, may "only hit the high spots", so to speak—as may readily be apparent from examination of the substantive provisions themselves. Therefore it seems to me that the plain restrictions on eviction in § 12 of the Act must stand on their own footing, and ought not to be upset by the courts unless it is clear that they are arbitrary or capricious interferences with property rights, having no reasonable relation to any objective in the general public interest which it is within the police power of the legislature to foster. See Woods v. Cloyd W. Miller Co., 1948, 333 U.S. 138, 144, 68 S.

Ct. 421, 92 L.Ed. 596. Applying this test, and for the reason above briefly indicated, I think there is no sufficient basis for invalidating § 12 of the Act as here applied.

A different result would hardly be required by referring to the Act as a "taking" of property for a public use. No doubt, under the Emergency Price Control Act, the federal government curtailed owners in the full exercise of their property rights. They could no longer charge such rents as they pleased. They could not displace one tenant at the expiration of a lease and put in another. They could not even evict a tenant in order to withdraw the premises from the rental market, without going through an administrative procedure which might involve considerable delay. See Taylor v. Bowles, supra; Parker v. Fleming, 1947, 329 U.S. 531, 67 S.Ct. 463, 91 L. Ed. 479. The legislature of Puerto Rico has here put somewhat greater limitations upon owners in the exercise of their normal property rights; but still, it seems to me that the analogy of eminent domain is of doubtful applicability.

Furthermore, even if it is accurate to say that, as applied to property already on the rental market, the legislature has in effect "taken" an indefinite term for a public purpose during the emergency, it now seems clear from the recent case of United States v. Commodities Trading Corp., 1950, 339 U.S. 121, 70 S.Ct. 547, that the "just compensation" called for would be the equivalent of a lawfully imposed maximum rent otherwise applicable to the property if the owner should choose to leave it on the rental market. Such "just compensation" is assured to the landlord under the Act in question, for the landlord is entitled to repossession if the tenant fails to pay the established maximum rent.