THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, JULIO SUÁREZ GARRIGA, JUDGE, Respondent; PAULINO SOMOHANO, Intervener.

No. 2158.   Argued May 8, 1956.—Decided November 30, 1956.

---

720

*José Trías Monge, Attorney General* and *Rafael L. Ydrach Yor-dán, Fiscal of the Supreme Court,* for petitioner. *Mariano Acosta Velarde* and *Daniel Pellón Lafuente* for intervener, defendant in the main action.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

Paulino Somohano was charged in the San Juan Part of the Superior Court with a violation of Act No. 228 of May 12, 1942 (Sess. Laws, p. 1268, 23 L.P.R.A. § 731 *et seq.*), in relation to Price Regulation No. 2 of August 5, 1953, because on December 18, 1953, he sold in San Juan "a package of Kool cigarettes containing 20 regular-size cigarettes, for the price of 32 cents . . ." instead of the maximum price of 29 cents fixed by the Act and the regulation. The defendant filed a demurrer for lack of facts to constitute a public offense. He alleged, briefly, that (1) the Economic Stabilization Administrator had no legal authority to promulgate Price Regulation No. 2, alleging that cigarettes are not a staple commodity, and (2) that he was an employee and not the owner of the establishment, and therefore was not covered by the provisions of Act No. 228. Based on the fact that "the Regulation on which the information is based . . . is void," since "the law does not vest the Administrator with power to fix maximum prices for cigarettes, which is not a staple commodity," the Superior Court sustained the demurrer. To review that order we issued writ of certiorari.

In our opinion, the lower court lacked jurisdiction to declare void Regulation No. 2, which fixes maximum prices for the sale of different brands of cigarettes, within a criminal prosecution for its violation. Hence, we need not decide here whether or not cigarettes are a "staple com-

modity." [1]   Sections 11 and 12 of Act No. 228 of 1942, as amended, provide a specific and exclusive procedure to attack the validity of the regulations, orders, and price schedules of the Economic Stabilization Administrator.   Section 11 in its pertinent part provides:

"Within the ten (10) days following the promulgation of any regulation or order, or of any price-schedule, any person directly subject to the provisions of such regulation or order, or of such price-schedule, may, in accordance with regulations prescribed by the Administrator, file an application for reconsideration setting forth his objections to any such provisions, accompanying same with affidavits or other written proof in support of such objections.   Any person subject to the provisions of any regulation or order, or of any price-schedule, may file such application for reconsideration at any time after the expiration of the said ten (10) days, based solely on grounds originating subsequent to the expiration of the said ten (10) days.   Within a reasonable period after the filing of any application for reconsideration under this Section, but in no case after thirty (30) days from the filing thereof, and forty (40) days after the promulgation of the regulation, order or price-schedule, the Administrator shall decide such application for reconsideration, fix a date for the hearing thereof, or provide an opportunity to introduce additional evidence in connection

---

[1] Act. No. 228 in its § 3(a) confers power on the Administrator to establish maximum prices in the cases therein provided for "staple commodities."   Said act does not define the term staple commodity, although it does confer power on the Administrator to promulgate a regulation defining this term.   The Federal Act after which our Act was patterned (Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C.A. App., § 901 et seq.), employed the words "commodity or commodities" instead of "staple commodity."   As to the scope of the power of the Price Administrator under the Federal Act, see Lincoln Sav. Bank of Brooklyn v. Brown, 137 F. 2d 228 (Em. App. 1943), and Taub v. Bowles, 149 F. 2d 817 (Em. App. 1945).   In Puerto Rico no law or regulation has ever been promulgated defining the term "staple commodities."   Price Regulation No. 2 merely declares the following:

"About 7,500,000 cartons of cigarettes are imported annually in Puerto Rico, at an approximate cost to the Puerto Rican consumer of $23,500,000. In view of the increase in the market of origin and as a result of an increase in excise taxes, there has been an unjustified increase in the price of this article to the consumer.   The importance of this item in the cost of living makes it necessary to fix specific maximum prices."

therewith; *Provided,* That every public hearing to be held, shall be duly advertised in one or more newspapers of general circulation in the Island. In case the Administrator dismisses, in whole or in part, any application for reconsideration, he shall notify the petitioner of the grounds for his decision, and of the data and facts of which the Administrator has taken official notice."

Furthermore, judicial review of such regulations, orders, and price schedules may be granted only in accordance with the following provisions of § 12:

"(*a*) Any person aggrieved by the dismissal, in whole or in part, of his application for reconsideration may, within the ten (10) days following the entry of notice of such dismissal, file a petition with the Supplies Appeal Court hereinafter created, setting forth his objections and praying that the regulation or order, or the price-schedule protested, be revoked in whole or in part. A copy of such petition shall be served on the Administrator, who shall certify and file with the court a transcription of such part of the proceedings in connection with the application for reconsideration as may be pertinent to the petition. Such transcription shall include a statement, in so far as possible, of the economic data and other facts of which the Administrator has taken official notice. *The Court shall have exclusive jurisdiction, upon the filing of such petition, to revoke such regulation, order or price-schedule, in whole or in part, or to dismiss the petition, or to remand the proceedings; Provided,* That the regulation, order, or price-schedule may be modified or rescinded by the Administrator at any time, notwithstanding the pendency of such petition. No objection to a regulation or order, or to a price-schedule, and no evidence in support of any objection thereto, shall be considered by the Court unless such objection has been stated by the petitioner in the application for reconsideration, or unless such evidence forms a part of the transcription. If the Court is moved by any of the parties for permission to introduce additional evidence which was offered to the Administrator and not admitted, or which could not have been reasonably offered to the Administrator, or included by the Administrator in the proceedings, and the Court determines that such evidence must be admitted, it shall direct that the evidence be presented to the Adminis-

trator. The Administrator shall admit same, as well as any other evidence he may deem necessary or proper, and he shall certify and file with the Court a transcription thereof, as well as any modification made to the regulation or order, or to the price-schedule as a result thereof; unless at the request of the Administrator such evidence is presented directly to the Court.

"(*b*) No regulation, order, or price-schedule shall be revoked in whole or in part unless the petitioner shows and establishes to the satisfaction of the Court, that the regulation, order or price-schedule is contrary to law, or is arbitrary or capricious. The effectiveness of a judgment of the Court revoking in whole or in part any regulation, order, or price-schedule shall be postponed until the expiration of thirty (30) days from the entry thereof, unless a petition for a writ of certiorari is filed with the Supreme Court of Puerto Rico within such thirty (30) days, in which case the effectiveness of the judgment shall be postponed until an order of the Supreme Court dismissing such petition of certiorari is entered and becomes final, or until final disposition of the case is made by the Supreme Court.

"     .     .     .     .     .     .     .     .

"(*d*) Within ten (10) days after entry of judgment or interlocutory or final order by the Supplies Appeal Court, a petition for a writ of certiorari may be filed in the Supreme Court of Puerto Rico, which petition shall be conducted in the manner prescribed by the law in the matter. The Supreme Court shall preferentially fix a date for the hearing of, and shall decide with the utmost possible speed, all appeals established for these purposes. The Supplies Appeal Court, and the Supreme Court of Puerto Rico, when reviewing judgments and orders of the General Supplies Administrator, *shall have exclusive jurisdiction to determine the validity of any regulation or order, or any price-schedule, and of any provision of such regulation or order, or price-schedule. Except as provided in this Section, no court shall have jurisdiction or power to consider the validity of any regulation or order, or any price-schedule, or to suspend, restrain, or prevent by injunction, or revoke or annul in whole or in part, any provision of this Act* authorizing the promulgation of such regulations or orders, or to prevent the effectiveness of a price-schedule or of any provision of any such regulations or orders or price-schedules, or to issue a writ of injunction to restrain the effectiveness and application of any such provision." (Italics ours.)

Sections 11 and 12 *supra* of our Act were copied almost verbatim from § § 203 and 204 of the Federal Emergency Price Control Act, 56 Stat. 31, 50 U.S.C.A. App., § § 923–24. Hence, in *Ruiz v. District Court*, 71 P.R.R. 358 (1950), we held, following the interpretation placed by the United States Supreme Court on § § 203 and 204 of the Federal Act in *Yakus v. U. S.*, 321 U. S. 414 (1944), that according to Act No. 228:

". . . the validity of the regulations or administrative orders should not be subject to attack in criminal prosecutions for their violation, at least before their invalidity had been adjudicated by recourse to the protest procedure prescribed by the statute.

"The provisions of § 12(*d*) in conferring *exclusive jurisdiction* on the Supplies Appeal Court [now the San Juan Part of the Superior Court] and on this Supreme Court to review the rules or orders of the General Supplies Administrator, plainly indicate that the rules, orders or price-schedules issued by the Administrator may be only attacked by the persons directly subject to its provisions under the specific and conclusive procedure prescribed by § § 11 and 12, *supra,* and that said rules, orders or price-schedules can not be attacked in an injunction within a criminal proceeding or in any other manner."

These norms apply provided it is alleged, by way of defense in a criminal prosecution, that a regulation or order of the Economic Stabilization Administrator is void, except where such regulation or order is unconstitutional on its face.  If the accused is directly subject to the provisions of the Act and of the administrative regulation or order, he may attack the power or authority of the Administrator to prescribe such regulation or order, only after resorting to the statutory proceeding authorized by Act No. 228.  In other words, where the defect of alleged invalidity, whether or not it appears on the face of the administrative regulation or order, refers exclusively to the powers or authority of the Administrator to promulgate such regulation or order under the Act, the Superior Court lacks jurisdiction to con-

sider and pass initially upon such question in a criminal prosecution. See *Lockerty* v. *Phillips*, 319 U.S. 182 (1942); *Yakus* v. *U.S.*, 321 U.S. 414, 446–47, 467 (1943); *Bowles* v. *Seminole Rock Co.*, 325 U.S. 410, 418–19 (1945); *Case* v. *Bowles*, 327 U.S. 92, 98–99 (1946); and *Kraus & Bros.* v. *U.S.*, 327 U.S. 614, 622–23 (1946). *Cf.* Davis, *Administrative Law* 752–54 (1951). One of the grounds of the demurrer filed by the defendant in *Ruiz* v. *District Court, supra*, was that "coffee is not a staple commodity . . . ," wherefore "the Administrator had no legal authority to promulgate (Administrative Order No. 196, fixing maximum prices for coffee)." In that case we held that the court lacked jurisdiction to determine the validity of such order in a criminal prosecution for its violation.

Obviously, in this case Price Regulation No. 2 is not unconstitutional on its face.[2] Also, we need not consider whether a person charged with criminal violation of a price regulation while diligently attacking it by a statutory procedure, may thus be deprived of the defense that the regulation is invalid. And there is nothing in the record to show that the defendant was not given an opportunity to establish the alleged invalidity of Price Regulation No. 2 within the statutory procedure prescribed by Act No. 228. *Cf. Yakus* v. *United States, supra*, at 447.

The information did not allege that Paulino Somohano was the owner of the establishment where the package of cigarettes was sold above the maximum price prescribed by Price Regulation No. 2. Nor was it alleged that he was an employee in the establishment. However, § 10 of Act No. 228 of 1942 expressly prohibits the sale or de-

---

[2] The decision in *Ex parte Irizarry*, 66 P.R.R. 634 (1946), would be justified only if we conceded that the administrative order issued under Act No. 228 was unconstitutional on its face, for the Legislature cannot require any one to sell to the public any commodity or to offer any accommodations for rent. See *Rivera* v. *Cobián Chinea & Co.*, 181 F. 2d 974 (1st Cir., 1950), and *Mora* v. *Mejías*, 223 F. 2d 814, 818 (1st Cir., 1955).

livery by any person, in the course of business, of any staple commodity in violation of a price schedule, regulation, or order of the Administrator. 23 L.P.R.A. § 741.[3] In other words, the owner of the establishment as well as his employees or any seller who personally participates in the sale or delivery in violation of a price regulation are subject to the penalties provided by Act No. 228 *supra*, § 13 (*b*) of which was amended by Act No. 31 of September 15, 1950 (Spec. Sess. Laws, p. 248) : "Any person who violates any provisions of this Act or of any price schedule, rule, regulation, or directive issued by the General Supplies Administrator under the provisions hereof, and any person who files or makes a statement or report that is false in any material respect, in any document or report required of such person by the Administrator, shall be guilty of a misdemeanor, and shall, upon conviction thereof, be punished by imprisonment in jail for a term of not less than thirty (30) days nor more than two (2) years, and in addition by a fine of not less than one hundred (100) dollars nor more than ten thousand (10,000) dollars. In default of the fine he shall be

---

[3] It provides that: "The sale or delivery by any person of any staple commodity, or the purchase or receipt in the course of business of any staple commodity in violation of any regulation or order issued hereunder, or of any price-schedule in effect pursuant to the provisions hereof, or of any regulation or order, requirement or measure made or established under the provisions hereof, shall be illegal, notwithstanding any contract, agreement, lease or other obligation entered into prior to or subsequent to this Act; and it shall be illegal to promise, solicit, attempt to do, agree to do, or fail to do any of the things hereinabove enjoined or directed, or in any manner to commit or omit any act in violation of any regulation or order issued under this Act." Session Laws 1942, p. 1280. This provision of the Act of 1942 was copied almost verbatim from § 4(*a*) of the Federal Emergency Price Control Act, 56 Stat. 23, 50 U.S.C.A. App., § 904. It is to this latter section of the Federal Act that reference is made by the United States Supreme Court in *Parker* v. *Fleming*, 329 U.S. 531 (1947), in determining what persons may secure judicial review of price orders pursuant to the procedure provided in the Act. Naturally, in addition to the people mentioned in § 10(*a*), those persons substantially and adversely affected and all those required or forbidden by the order to perform certain acts are "*subject to*" the administrative orders.

sentenced to imprisonment in jail for one day for each dollar he fails to pay. . . ." See *People* v. *López*, 67 P.R.R. 585 (1947); *People* v. *Díaz*, 67 P.R.R. 736 (1947); and *People* v. *Miranda*, *ante*, p. 667. Therefore, the defendant was, even admitting as true his allegation that he was acting as an employee, a person *subject directly* to the provisions of Act No. 228 and to Price Regulation No. 2, and could have attacked the validity of the Administrator's regulation by the statutory procedure of judicial review prescribed in §§ 11 and 12, but only by recourse to that procedure and not within a criminal prosecution for violation of said Regulation. *Parker* v. *Fleming*, *supra*, at 534–35 (1947). *Cf. Tenant's Standing to Attack O.P.A. Orders*, 42 Ill. L. Rev. 119 (1947).

We therefore conclude that the lower court erred in sustaining the demurrer. The order will be set aside and the case remanded for further proceedings.

Mr. Chief Justice Snyder concurs in the result.