EL PUEBLO DE PUERTO RICO, peticionario *v*. TRIBUNAL SUPE-
RIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. JULIO
SUÁREZ GARRIGA, JUEZ, demandado; PAULINO SOMOHANO,
interventor.

Número 2158.

*Sometido:* 8 de mayo de 1956. *Resuelto:* 30 de noviembre de 1956.

*Hon. Secretario de Justicia José Trías Monge* y *Rafael L. Ydrach
Yordán, Fiscal del Tribunal Supremo*, abogados del peticio-
nario; *Mariano Acosta Velarde* y *Daniel Pellón Lafuente*,
abogados del interventor, demandado en la causa principal.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del
Tribunal.

Paulino Somohano fué acusado ante el Tribunal Supe-
rior, Sala de San Juan, de haber infringido la Ley núm. 228
de 12 de mayo de 1942 (23 L.P.R.A. sec. 731 y sigtes.) en
relación con el Reglamento de Precios núm. 2 de agosto 5

de 1953 porque en 18 de diciembre de 1953 vendió en San Juan "una cajetilla de cigarrillos marca Kool, de 20 cigarrillos, tamaño corriente, por el precio de treinta y dos centavos . . .", no obstante ser veinte y nueve centavos el precio máximo autorizado por la ley y el referido reglamento. A esa acusación presentó el acusado excepción perentoria por falta de hechos constitutivos de delito público. Alegó en síntesis que (1) el Administrador de Estabilización Económica no tenía autoridad legal para promulgar dicho Reglamento de Precios núm. 2 porque el cigarrillo no es un artículo de primera necesidad y (2) él era un empleado y no el dueño del establecimiento, y que no siéndolo no está cubierto por las disposiciones de la Ley núm. 228. Fundándose en que "el Reglamento en que se basa la acusación . . . es nulo" pues ". . . la ley no da facultad al Administrador para fijar el precio (máximo) a los cigarrillos por no ser éstos artículos de primera necesidad", el Tribunal Superior declaró con lugar la excepción perentoria. Expedimos el auto de *certiorari* para revisar dicha resolución.

■■ A nuestro juicio el tribunal a quo no tenía jurisdicción para declarar nulo el Reglamento núm. 2, fijando precios máximos para la venta de diversas marcas de cigarrillos, dentro de un proceso criminal por su infracción. Por eso resulta innecesario resolver aquí si los cigarrillos constituyen o no "artículos de primera necesidad".[1] La Ley núm. 228 de 1942, según enmendada, provee en sus arts. 11 y 12 un procedimiento específico y exclusivo para impugnar

---

[1] La Ley núm. 228 en su art. 3 (*a*) confiere poder al Administrador para fijar precios máximos en los casos allí indicados a los "artículos de primera necesidad". En la ley no se define lo que constituye un artículo de primera necesidad, aunque se confiere poder al Administrador para promulgar un reglamento estableciendo dicha definición. La Ley federal que sirvió de modelo para la nuestra (Ley de Emergencia sobre Control de Precios de 1942, 56 Stat. 23, 50 U.S.C.A. App., secs. 901 y siguientes) usó las palabras "commodity or commodities" en lugar de "artículos de primera necesidad". En cuanto al alcance de los poderes del Administrador de Precios bajo la ley federal, véanse *Lincoln Sav. Bank of Brooklyn* v. *Brown*, 137 F.2d 228 (Em. App. 1943 y *Taub* v.

la validez de las reglas, órdenes o escalas de precios del Administrador de Estabilización Económica. El art. 11 dispone en lo pertinente:

"Dentro de los diez (10) días siguientes a la promulgación de cualquier regla u orden, o de una escala de precios, cualquier persona sujeta directamente a las disposiciones de dicha regla, u orden o escala de precios, podrá, de acuerdo con los reglamentos que prescriba el Administrador, radicar una solicitud de reconsideración especificando sus objeciones a cualquiera de dichas disposiciones, acompañándola de declaraciones juradas (*affidavits*) o de otra prueba escrita en apoyo de tales objeciones. En cualquier tiempo después de la expiración de dichos diez (10) días, cualquier persona sujeta a las disposiciones de cualquier regla, u orden o escala de precios, podrá radicar tal solicitud de reconsideración basada solamente en fundamentos ocurridos después de la expiración de los referidos diez (10) días. Dentro de un término razonable después de la radicación de cualquier solicitud de reconsideración bajo esta sección, pero en ningún caso después de treinta (30) días de su radicación, y cuarenta (40) días después de la promulgación de la regla, orden o escala de precios, el Administrador resolverá tal solicitud de reconsideración, la señalará para vista o proveerá una oportunidad para presentar prueba adicional en conexión con la misma; Disponiéndose, que la celebración de toda vista pública deberá anunciarse oportunamente en uno o más periódicos de circulación general en el Estado Libre Asociado. En caso de que el Administrador declare sin lugar cualquier solicitud de reconsideración en todo o en parte, informará al solicitante los fundamentos de su decisión, y los datos y hechos de que el Administrador ha tomado conocimiento oficial."

---

*Bowles*, 149 F.2d 817 (Em. App. 1945). En Puerto Rico nunca se ha promulgado una regla u orden definiendo el término "artículos de primera necesidad". El Reglamento de Precios núm. 2 se limita a declarar lo siguiente:

"Anualmente se importan en Puerto Rico alrededor de 7,500,000 cartones de cigarrillos con un costo aproximado para el consumidor puertorriqueño de $23,500,000. Aprovechándose de un aumento habido en el mercado de origen y como consecuencia de un aumento en los arbitrios, se ha registrado un alza injustificada en el precio al consumidor de este artículo. La importancia de este renglón en el costo de vida hace necesaria la determinación de precios máximos específicos."

Además la revisión judicial de dichas reglas, órdenes y escalas de precios sólo puede llevarse a cabo de acuerdo con las siguientes disposiciones del art. 12:

"(a) Cualquier persona perjudicada por la denegación o parcial denegación de su solicitud de reconsideración podrá, dentro de los diez (10) días siguientes al archivo de la notificación de tal denegación, radicar una petición ante la sala de San Juan del Tribunal Superior, especificando sus objeciones y solicitando que la regla u orden, o escala de precios protestada, sea revocada en todo o en parte. Una copia de tal petición será notificada al Administrador el que certificará y radicará en la Corte una transcripción de la parte de los procedimientos en conexión con la solicitud de reconsideración que sean pertinentes a la petición. Tal transcripción incluirá una exposición, en cuanto sea posible, de los datos económicos y de otros hechos de que el Administrador haya tomado conocimiento oficial. *Al radicarse la petición la Corte tendrá jurisdicción exclusiva para revocar tal regla, orden o escala de precios en todo o en parte, o para desestimar la petición o para devolver los procedimientos;* Disponiéndose, que la regla, orden o escala de precios podrá ser modificada o rescindida por el Administrador en cualquier tiempo, a pesar de la pendencia de tal petición. Ninguna objeción a una regla u orden o escala de precios y ninguna prueba en apoyo de cualquier objeción a las mismas, será considerada por la corte a menos que tal objeción haya sido expuesta por el peticionario en la solicitud de reconsideración, o que tal prueba forme parte de la transcripción. Si se solicita de la Corte por cualquiera de las partes permiso para presentar prueba adicional que fué ofrecida al Administrador y no admitida, o que no pudo ser razonablemente ofrecida al Administrador, o incluída por el Administrador en los procedimientos y la corte determina que tal prueba debe ser admitida, ordenará que la prueba sea presentada al Administrador. El Administrador recibirá la misma así como cualquier otra prueba que estime necesaria o propia, y certificará y radicará en el tribunal una transcripción de la misma, y cualquier modificación hecha a la regla u orden o escala de precios como resultado de la misma, a menos que a petición del Administrador tal prueba sea presentada directamente a la Corte.

(b) Ninguna regla, orden o escala de precios será revocada en todo o en parte a menos que el peticionario demuestre y esta-

blezca a satisfacción de la corte que la regla, orden o escala de precios es contraria a la ley, arbitraria o caprichosa. La efectividad de una sentencia de la Corte, revocando en todo o en parte cualquier regla, orden o escala de precios, se pospondrá hasta la expiración de treinta (30) días desde que sea archivada, a menos que se presente un recurso de certiorari ante el Tribunal Supremo de Puerto Rico dentro de dichos treinta (30) días, y en este caso la efectividad de la sentencia se pospondrá hasta que una orden del Tribunal Supremo denegando la petición de certiorari recaiga con carácter final, o hasta la definitiva terminación del caso por el Tribunal Supremo.

(d) Dentro de diez (10) días después de archivada una sentencia u orden interlocutoria o final por el Tribunal Superior podrá solicitarse la expedición de un auto de certiorari ante el Tribunal Supremo de Puerto Rico, el cual se tramitará en la forma prescrita por la ley sobre la materia. El Tribunal Supremo señalará preferentemente y resolverá con la mayor rapidez posible todos los recursos que se establezcan con estos fines. El Tribunal Superior y el Tribunal Supremo de Puerto Rico, al revisar las sentencias y órdenes del Administrador de Estabilización Económica *tendrán jurisdicción exclusiva para determinar la validez de cualquier regla u orden o escala de precios y de cualquier provisión de tal regla u orden o escala de precios. Excepto en la forma en que se provee en esta sección, ningún tribunal tendrá jurisdicción o poder para considerar la validez de cualquier regla u orden o escala de precios o para suspender, restringir o impedir por medio de un injunction, o para revocar o anular en todo o en parte, cualquier disposición de esta Ley* autorizando la promulgación de tales reglas u órdenes, o para impedir que sea efectiva una escala de precios o cualquier provisión de cualquiera de dichas reglas u órdenes o escalas de precios, o para expedir un auto de injunction para detener la vigencia y aplicación de cualquiera de dichas disposiciones." (Bastardillas nuestras.)

Los referidos arts. 11 y 12 de nuestra ley fueron copiados casi al pie de la letra de las secs. 203 y 204 de la Ley Federal de Emergencia sobre Control de Precios, 56 Stat. 31, 50 U.S.C.A. App., secs. 923 y 924. Por eso en *Ruiz v. Corte,* 71 D.P.R. 384 (1950) resolvimos, siguiendo la interpreta-

ción que dió el Tribunal Supremo de los Estados Unidos a las secs. 203 y 204 de la Ley Federal en *Yakus* v. *United States*, 321 U.S. 414 (1944), que de conformidad con la Ley núm. 228:

". . . la validez de las reglas u órdenes administrativas no debe estar sujeta a ataque en una causa criminal por su infracción, por lo menos antes de que su nulidad haya sido adjudicada dentro del procedimiento de protesta prescrito por el estatuto.

"Lo provisto por el artículo 12 (*d*) al conferir *jurisdicción exclusiva* a la Corte de Apelación de Suministros [hoy la sala de San Juan del Tribunal Superior] y a este Tribunal Supremo para revisar las reglas u órdenes del Administrador General de Suministros, indica de la manera más palmaria que las reglas, órdenes o escalas de precios del Administrador sólo pueden ser atacadas por las personas sujetas directamente a sus disposiciones a virtud del procedimiento específico y terminante provisto en los artículos 11 y 12, supra, y que no se puede hacer un ataque a dichas reglas, órdenes o escalas de precios mediante *injunction* dentro de un procedimiento criminal o en cualquiera otra forma."

Las referidas normas son aplicables siempre que por vía de defensa en una causa criminal se alegue que es nula una regla u orden del Administrador de Estabilización Económica, salvo el caso en que dicha regla u orden sea inconstitucional de su faz. Si la persona acusada está sujeta directamente a las disposiciones de la Ley y de la regla u orden administrativa, sólo puede valerse del procedimiento estatutario autorizado por la Ley núm. 228 a fin de impugnar el poder o facultad del Administrador para promulgar dicha regla u orden. Es decir, cuando el vicio de la alegada nulidad, aparezca ésta o no de la faz de la regla u orden administrativa, se refiere únicamente a las facultades o poderes del Administrador para promulgarla de acuerdo con lo dispuesto en la ley, el Tribunal Superior carece de jurisdicción para considerar y resolver inicialmente dicha cuestión en un procedimiento criminal. Véanse *Lockerty* v. *Phillips*,

319 U.S. 182 (1942) ; *Yakus* v. *United States*, 321 U.S. 414, 446–447, 467 (1943) ; *Bowles* v. *Seminole Rock Co.*, 325 U.S. 410, 418–419 (1945) ; *Case* v. *Bowles*, 327 U.S. 92, 98–99 (1946) y *Kraus & Bros.* v. *United States*, 327 U.S. 614, 622–623 (1946). Cf. Davis, *Administrative Law* (1951) 752–754. Precisamente uno de los motivos de la excepción perentoria que presentó el acusado en *Ruiz* v. *Corte*, supra, fué que "el café no es un producto de primera necesidad . . ." por lo cual "el Administrador no tenía autoridad legal para promulgar (la Orden Administrativa núm. 196, fijando precios máximos para el café)". Allí resolvimos que el tribunal carecía de jurisdicción para considerar la validez de dicha orden en una causa criminal por su infracción.

Obviamente en este caso el Reglamento de Precios núm. 2 no es inconstitucional a primera faz.(²) Además no tenemos que considerar si una persona a quien se le enjuicia y condena criminalmente por una infracción de un reglamento de precios, mientras diligentemente impugna la validez del mismo a través del procedimiento estatutario, puede así ser despojada de la defensa de que dicho reglamento es nulo. Y en los autos nada demuestra que al acusado se le privó de la oportunidad de establecer la alegada nulidad del Reglamento de Precios núm. 2 dentro del procedimiento estatutario prescrito por la Ley núm. 228. Cf. *Yakus* v. *United States*, supra, 447.

■ En la acusación no se alegó que Paulino Somohano fuera dueño del establecimiento donde se vendió una cajetilla de cigarrillos en exceso del precio máximo fijado en dicho artículo del Reglamento de Precios núm. 2. Tampoco se alegó que él era un empleado en dicho establecimiento.

---

(²) La decisión en el caso de *Ex parte Irizarry*, 66 D.P.R. 672 (1946) sólo podría justificarse si aceptamos que la orden administrativa promulgada bajo la Ley núm. 228 era inconstitucional de su faz porque la Legislatura no puede obligar a nadie a vender al público cualquier artículo o a ofrecer cualquier alojamiento en alquiler. Véanse *Rivera* v. *R. Cobián Chinea & Co.*, 181 F.2d 974 (C.A. 1, 1950) ; y *Mora* v. *Mejías*, 223 F.2d 814, 818 (C.A. 1, 1955).

Sin embargo, el artículo 10 de la Ley núm. 228 de 1942, expresamente prohibe la venta o entrega en el curso de los negocios por cualquier persona de cualquier artículo de primera necesidad en violación de una escala de precios, regla u orden del Administrador. 23 L.P.R.A. sec. 741.([3]) Es decir, tanto el dueño del establecimiento como sus empleados o cualquier vendedor que participe personalmente en dicha venta o entrega en violación de un reglamento de precios, están sujetos a las penalidades impuestas por la citada Ley núm. 228, según quedó enmendada en su artículo 13 (*b*) por la Ley núm. 31 de 15 de septiembre de 1950: "Cualquier persona que violare alguna disposición de esta Ley, o de cualquier escala de precios, regla, reglamento u orden emitido por el Administrador General de Suministros de acuerdo con las disposiciones de esta Ley, y cualquier persona que radique o haga alguna declaración o informe falso en algún aspecto fundamental en algún documento o informe requerido de dicha persona por el Administrador incurrirá en delito menos grave (*misdemeanor*) y de ser convicta se le

---

([3]) Dispone que: "Será ilegal, no obstante cualquier contrato, acuerdo, arrendamiento u otra obligación contraída con anterioridad o con posterioridad a esta Ley, la venta o entrega por persona alguna de cualquier artículo de primera necesidad, o la compra o recibo, en el curso de los negocios, de cualquier artículo de primera necesidad en violación de cualquier regla u orden expedida bajo esta Ley, o de cualquier escala de precios efectiva de acuerdo con las disposiciones de esta Ley, o de cualquier regla, orden o requisito o medida expedida o establecida bajo las disposiciones de esta Ley, y será ilegal ofrecer, solicitar, intentar hacer o convenir en hacer, o dejar de hacer, algo de lo anteriormente prohibido u ordenado, o en alguna forma incurrir en u omitir cualquier acto en violación de cualquier regla u orden expedida bajo esta Ley." Leyes de 1942, pág. 1281. Esta disposición de la Ley de 1942 se copió casi al pie de la letra de la sec. 4 (*a*) de la Ley Federal de Emergencia sobre Control de Precios, 56 Stat. 28, 50 U.S.C.A., App., sec. 904. A esta última sección de la ley federal es que se refiere la Corte Suprema de los Estados Unidos en el caso de *Parker* v. *Fleming*, 329 U.S. 531 (1947) al determinar quiénes pueden solicitar la revisión judicial de órdenes de precios de conformidad con el procedimiento provisto en la ley. Naturalmente, además de las personas mencionadas en la sec. 10 (*a*), están "*sujetas*" a las órdenes administrativas las personas afectadas sustancial y adversamente y todas aquellas de las cuales la orden exige o prohibe cualesquiera actuaciones.

castigará con cárcel por un término que no será menor de treinta (30) días ni mayor de dos (2) años y además con multa que no será menor de cien (100) dólares ni mayor de diez mil (10,000) dólares. En defecto de la multa se impondrá un día de cárcel por cada dólar que se dejare de pagar . . ." Véanse *Pueblo* v. *López,* 67 D.P.R. 623 (1947); *Pueblo* v. *Díaz,* 67 D.P.R. 785 (1947) y *Pueblo* v. *Miranda,* ante pág. 710. Por tanto, el acusado era, aún aceptando que es cierta su alegación de que actuaba como empleado, una persona *sujeta directamente* a las disposiciones de la Ley núm. 228 y del Reglamento de Precios núm. 2 y hubiese podido atacar la validez de dicho reglamento del Administrador a virtud del procedimiento estatutario de revisión judicial provisto en los arts. 11 y 12, pero únicamente valiéndose del referido procedimiento y no dentro de una causa criminal por su infracción. *Parker* v. *Fleming,* 329 U.S. 531, 534–535 (1947). Cf. *Tenant's Standing to Attack O.P.A. Orders,* 42 Ill. L. Rev. 119 (1947).

Siendo ello así, debemos concluir que erró el tribunal a quo en declarar con lugar la excepción perentoria. *Debe anularse la resolución y devolverse el caso para ulteriores procedimientos.*

El Juez Presidente Sr. Snyder concurre en el resultado.